Reed **JENKINS, Alexander Engelman, Alvin L. Stoval, Harold E. Weber, Gerald A. Engelman, Harold A. Bath, Howard J. Newhauser, Herbert D. Sander, and William L. Bessent, Plaintiffs–Appellants,**

v.

**Marvin JACOBS, and C.H. Mulder, Defendants–Appellees.**

**No. 84CA0602.**

Colorado Court of Appeals, Div. II.

July 16, 1987.

Rehearing Denied Sept. 3, 1987.

Certiorari Denied Jan. 11, 1988.

Irvin M. Kent, Bruce A. Matas, Aurora, for plaintiffs-appellants.

Dill, Dill & McAllister, Tom French, John A. Hutchings, Lucien Dhooge, Denver, for defendants-appellees.

SMITH, Judge.

In this securities fraud action, plaintiffs, Reed Jenkins, Alexander Engleman, Alvin L. Stoval, Harold E. Weber, Gerald A. Engleman, Harold A. Bath, Howard J. Newhauser, Herbert D. Sander, and William L. Bessent, appeal from the judgment of the trial court entered on a jury verdict in favor of defendants, Marvin Jacobs and C.H. Mulder. We reverse and remand with directions.

This dispute arises out of an investment scheme which began in 1977, when defendant Mulder invited defendant Jacobs to participate in an investment opportunity in which Mulder would take money to a Max Polsky in Lincoln, Nebraska, who then paid Mulder six percent interest per week on the money. Mulder kept one percent of the interest earned on Jacob's investment as an "override" and gave Jacobs five percent interest.

Jacobs subsequently invited plaintiffs to invest with Polsky which they did in the collective amount of $200,000. Plaintiffs would give their funds to Jacobs who gave them to Mulder who took them to Polsky in Nebraska. Polsky paid the interest income to Mulder who kept his one percent "override" on all the money and gave five percent to Jacobs. Jacobs also kept a one percent "override" on the funds and paid plaintiffs four percent interest per week on

their investment. Neither Jacobs nor Mulder told plaintiffs that they were each keeping this one percent "override."

In February 1978, Polsky stopped making the interest payments to Mulder. He started again approximately two months later, but then stopped making the payments completely that June. Attempts to recover the funds invested or even to speak with Polsky were unsuccessful.

Plaintiffs initiated this action against Jacobs, Mulder, and Polsky to recover their losses. A default judgment was entered against Polsky, and the claims against Jacobs and Mulder proceeded to trial. Both testified that they thought the funds they were giving to Polsky were merely loans.

At the close of all the evidence, a motion by plaintiffs for a directed verdict was denied by the court. The jury subsequently returned a verdict on all claims for the defendants.

On appeal, plaintiffs argue that the trial court erred in denying their motion for a directed verdict because the undisputed evidence at trial established that the transaction involved the sale of a security as a matter of law and that the actions of defendants in connection therewith violated the requirements of the Colorado Securities Act. We agree.

Section 11–51–125, C.R.S., in effect at the time, provided:

"Any person who ... offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him...."

Whether the transactions concerned a "security" was an issue at trial. "Security" is defined in § 11–51–102(12), C.R.S., as:

"any note; stock; ... evidence of indebtedness; certificate of interest or partic-

ipation in any profit-sharing agreement; ... *investment contract*; ... or, in general, any interest or instrument commonly known as a security...." (emphasis supplied)

Initially, we note that these sections are very similar to parallel provisions found in the Security Act of 1933, 15 U.S.C. § 77a, et seq. Therefore, federal authorities interpreting the parallel provisions are highly persuasive. *Goss v. Clutch Exchange, Inc.*, 701 P.2d 33 (Colo.1985).

■ The term "investment contract" is not defined by either the state or federal securities laws but has been broadly construed by the courts so as to afford the investing public adequate protection. The test for determining if something is an investment contract is whether it is a transaction or scheme in which a person makes an investment in a common enterprise and is led to expect profits solely from the efforts of others. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *See also Raymond Lee Organization, Inc. v. Division of Securities*, 192 Colo. 112, 556 P.2d 1209 (1976).

■ Here, the undisputed evidence adduced at trial established that Jacobs approached plaintiffs, invited them to participate in this investment scheme, and led them to expect that their investment would yield a high rate of return based solely upon the efforts of Polsky. Plaintiffs gave their money to Jacobs, who pooled it and gave it to Mulder. Mulder took the funds to Polsky in Nebraska who, thereafter, had exclusive control of the manner in which they were managed. There is no question but that this transaction squarely meets the test of being an investment contract.

■ Defendants argue that they thought the funds given to Polsky were merely loans. That belief, however, makes no difference since it is not the label given the transaction which controls, but rather its substance and the economic realities of the situation. *S.E.C. v. W.J. Howey Co.*, *supra*.

Further, the evidence was undisputed that defendants did not tell any of the plaintiffs that their payments represented

a loan. Rather, in inducing plaintiffs to participate, they represented the transaction simply as an investment in a common enterprise that would return a profit to them solely from the efforts of Polsky. This was, by definition, an investment contract. *See S.E.C. v. W.J. Howey Co., supra.*

 Plaintiffs further contend that because the undisputed evidence adduced at trial established that defendants had violated § 11–51–125(1) by failing to make a full and fair disclosure of all material facts, the trial court erred in refusing to direct a verdict in favor of plaintiffs. We agree.

A misrepresented or omitted fact is considered material under § 11–51–125(1) if there is a substantial likelihood that a reasonable investor would consider the matter important in making an investment decision. *Goss v. Clutch Exchange, Inc., supra.*

Neither party disputes the fact that defendants did not disclose to plaintiffs that they were receiving the one percent commissions or "overrides" which amounted to two percent or one third of the interest Polsky was actually paying on plaintiffs' investment. Any reasonable investor would consider a return reduced by this amount to be an important factor in making an investment decision.

We therefore find that, as a matter of law, failure to disclose the deduction of a commission that amounted to one-third of the ostensible profit plaintiffs were receiving on their investment constituted a failure to disclose a material fact. *See §§ 11–51–110(2)(e) and 11–51–125, C.R.S.. See also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

 Ordinarily, it is the function of the jury to assess the credibility of witnesses, evaluate and weigh the evidence presented, and determine the facts of the case. However, a directed verdict is proper when there is no substantial conflict in the evidence and it is susceptible to only one interpretation by reasonable persons. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo.1986). The trial court should take an issue from the jury only in the absence of evidence upon which a jury could justifiably determine the issue for the party opposing the directed verdict. *Tri-Aspen Construction Co. v. Johnson*, 714 P.2d 484 (Colo.1986).

Here, there was no substantial conflict in the evidence which established both that the transaction in question was a security and that defendants failed to inform plaintiffs of their "overrides." Further, the only interpretation which can be given this evidence by reasonable persons is that defendants failed to disclose a material fact to plaintiffs in violation of § 11–51–125(1). Therefore, we hold that the trial court erred in denying plaintiffs' motion for a directed verdict.

Accordingly, the judgment is reversed and the cause is remanded to the trial court for entry of judgment in favor of plaintiffs on the issue of liability, and for a new trial on the issue of damages.

STERNBERG and BABCOCK, JJ., concur.