Jimmy Wayne THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–01844–CR.

Court of Appeals of Texas, Dallas.

Aug. 27, 1999.

E.X. Martin, Attorney at Law, Dallas, Paul G. Kratzig, Attorney at Law, Corpus Christi, for Appellant.

Pamela Sullivan Berdanier, Assistant District Attorney, Dallas, for State.

Before Justices MALONEY, WHITTINGTON, and BRIDGES.[1]

## OPINION ON REMAND

FRANCES MALONEY, Justice.

The jury found Jimmy Wayne Thomas guilty of securities fraud. The trial court assessed a ten year sentence and $5000 fine, suspended the sentence, and placed appellant on ten years probation. On original submission, appellant contended in five points of error (1) the trial court erred in including the civil definition of "evidence of indebtedness" in the jury charge and allowing the State's expert witness to testify to legal conclusions, and (2) the evidence is insufficient to show he offered to sell or sold an "evidence of indebtedness." On remand, in three points of error, appellant complains (1) the evidence is legally and factually insufficient to show appellant sold or offered to sell a security or that the alleged security was of the type required by the Texas Securities Act (the Act),[2] and (2) the trial court erred in allowing the State's expert witness to testify to legal conclusions. Because we hold the Act requires an "evidence of indebtedness" to be in writing, we reverse the trial court's judgment and enter a judgment of acquittal.

## BACKGROUND

Appellant was developing and marketing electronic kiosks to dispense videotapes through his company, United Media Group, Inc. (United). Appellant originally approached complainant about becoming a salesman for United.[3] Appellant next con-vinced complainant to invest in United to secure additional funding for United's expenses. Appellant told complainant he could expect his principal's return in thirty to sixty days and would receive five times his original investment within several months and an additional five times his investment within a year. During June 1991, complainant invested $50,000 in United.

In late July or early August 1991, appellant told complainant that "another $20,000 [was] available if he wanted to invest." Appellant explained that a Tennessee family needed its money back quickly. On August 2, 1991, complainant invested another $10,000 under the same terms as his previous investments. United neither issued any shares of stock to complainant, returned his principal, nor paid him any profits on his investments.

The grand jury indicted appellant for violations of the Act. The indictment alleged two theories of fraud in the sale or offer for sale of a security on or about August 2, 1991. The first paragraph alleged fraud by appellant's failure to disclose that he had previously spent funds invested in United for purposes unrelated to United. The second paragraph alleged fraud by appellant's failure to disclose that he had filed for personal bankruptcy. Both paragraphs alleged the "security" at issue was an "evidence of indebtedness." The jury convicted appellant of fraud in the sale of a security under the first paragraph of the indictment.

On original submission, this Court, in a plurality opinion, reversed the trial court's judgment and entered a judgment of acquittal.[4] *See Thomas v. State*, No. 05–92–01844–CR, 1994 WL 605946 (Tex.App.—

1. The Honorable William Barber participated in the original submission of this cause. The Honorable David L. Bridges succeeded Justice Barber. Justice Bridges has reviewed the record and briefs in this cause.

2. *See* TEX.REV.CIV. STAT. ANN. arts. 581–1 to –42 (Vernon 1964 & Supp.1999).

3. Appellant and complainant knew each other through their church.

4. Justice Barber, in a written opinion, concurred in the judgment only. Justice Whittington, without written opinion, did not join in Justice Barber's opinion, but concurred in the judgment only.

Dallas Oct.31, 1994) (not designated for publication), *vacated,* 919 S.W.2d 427 (Tex. Crim.App.1996). As author, I concluded that the trial court erred in charging the jury in a criminal case with the broad *Searsy* civil definition of "evidence of indebtedness." *See Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637, 641 (Tex. 1977).

On discretionary review, the court of criminal appeals vacated this Court's judgment, holding that the *Searsy* definition applied to criminal prosecutions. *See Thomas,* 919 S.W.2d at 432. The court remanded this cause to this Court for "consideration consistent with [its] opinion." *Id.* Because the court commented in its remand that this Court "did not address the question of whether or not a writing is required under the Act," we first address whether an "evidence of indebtedness" requires a writing.

## SUFFICIENCY OF THE EVIDENCE

In his first and second points of error, appellant asserts that no or insufficient evidence exists to show that he sold or offered to sell a security within the meaning of the Act. Specifically, appellant argues that the August 2, 1991 transaction did not involve an "evidence of indebtedness" because an "evidence of indebtedness" must be a written instrument, and the State failed to prove any such instrument existed.[5]

The State responds that a written instrument is unnecessary because requiring an "evidence of indebtedness" to be in writing defeats the Act's purpose of protecting investors and allows those persons who induce others into fraudulent investment transactions to avoid penalty by not providing a writing to the investor. Alternatively, the State argues it produced sufficient writings at trial to constitute an "evidence of indebtedness."

### 1. Standard of Review

In reviewing a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jones v. State,* 833 S.W.2d 118, 122 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). The factfinder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic to ultimate facts. *Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.— Dallas 1991, pet. ref'd). The factfinder is the exclusive judge of the witnesses' credibility and the testimony's weight. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Dumas,* 812 S.W.2d at 615. The factfinder may accept or reject any or all evidence. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). That the appellant presents a different factual version does not render the evidence insufficient. *Anderson v. State,* 701 S.W.2d 868, 872–73 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).

### 2. Applicable Law

The Act is penal in nature, and we must strictly construe its provisions.

---

**5.** Appellant also argues that the transaction between him and complainant actually involved complainant's prospective employment as a salesman for United and, thus, should be construed as a "distributorship or franchise rather than a security type investment." While appellant may be correct in asserting that a June 11, 1991 Letter of Agreement between appellant, on behalf of United, and complainant related to the sublet of territorial rights and supply of retail distributing centers does not constitute a "security," we conclude that the transaction at issue in this case did involve an investment. At trial, both appellant and complainant testified to the investment nature of the August 2, 1991 transaction.

*Thomas,* 919 S.W.2d at 430 (citing *Bruner v. State,* 463 S.W.2d 205, 215 (Tex.Crim. App.1970)). Thus, the statute must clearly prohibit a forbidden act. *Id.* We resolve any doubt on whether an accused has committed an offense in favor of the accused. *Id.*

■ The Act in effect at the time of appellant's alleged fraud in selling a security defined a "security" as:

> any share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate *or other evidence of indebtedness,* any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the State Board of Insurance when the form of such policy or contract has been duly

filed with the Board as now or hereafter required by law.

Act of May 22, 1989, 71st Leg., R.S., ch. 733, § 1, 1989 Tex. Gen. Laws 3283, 3283, *amended by* Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 3, 1993 Tex. Gen. Laws 3887, 3913, *amended by* Act of May 15, 1995, 74th Leg., R.S., ch. 228, § 3, 1995 Tex. Gen. Laws 1983, 1983 (current version at TEX.REV.CIV. STAT. ANN. art. 581–4.A. (Vernon Supp.1999)) (emphasis added). An "other evidence of indebtedness" is "all contractual obligations to pay in the future for consideration presently received." *Thomas,* 919 S.W.2d at 432 (adopting the supreme court's holding in *Searsy,* 560 S.W.2d at 641).

■ We must interpret the terms of a statute in accordance with the sense and context in which they are used. *Tanner v. State,* 838 S.W.2d 302, 304 (Tex.App.–El Paso 1992). The Act's purpose, together with the context in which the term appears, limits how we construe "other evidence of indebtedness." *See Thomas,* 919 S.W.2d at 432. We must apply "other evidence of indebtedness" in light of the underlying purpose of the Act—to "protect investors." *See* TEX.REV.CIV. STAT. ANN. art. 581–10–1.B. (Vernon Supp.1999); *Thomas,* 919 S.W.2d at 432. In context, the term "other evidence of indebtedness" expands upon the grouping "note, bond, debenture, mortgage certificate." *See* Act of May 22, 1989, 71st Leg., R.S., ch. 733, § 1, 1989 Tex. Gen. Laws 3283, 3283; *Thomas,* 919 S.W.2d at 432. In context, an "evidence of indebtedness" must be a similar *type* of security as a note, bond, debenture, and mortgage certificate.[6] *Thomas,* 919 S.W.2d at 432.

6. Under the statutory construction rule of *ejusdem generis,* we interpret a general item that follows an enumeration of specific items as confined to items of the same kind. Black's Law Dictionary defines *ejusdem generis* as follows:

> [O]f the same kind, class or nature. In the construction of laws, wills and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a

particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as to applying only to persons or things of the same general kind or class as those specifically mentioned.... The rule, however, does not necessarily require that the general provision be limited in scope to the identical things specifically named. Nor does it apply when the context manifests a contrary definition.

A "note" is "an instrument containing an express and absolute promise of signer (*i.e.* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time." *Id.* at 431 n. 6 (quoting BLACK'S LAW DICTIONARY 1060 (6th ed.1990)). A "bond" is a "certificate or evidence of a debt on which the issuing company or governmental body promises to pay the bondholders a specified amount of interest for a specified length of time, and to repay the loan on the expiration date." *Id.* (quoting BLACK'S LAW DICTIONARY 178). A "debenture" is a "promissory note or bond backed by the general credit and earning history of a corporation and usually not secured by a mortgage or lien on any specific property[.]" *Id.* (quoting BLACK'S LAW DICTIONARY 401). A mortgage certificate is a "document evidencing participation in a large mortgage held by the mortgagee for the benefit of the certificate holders." *Id.* (quoting BLACK'S LAW DICTIONARY 1012).

### 3. Application of Law to Facts

■ The State relies on *Sulkow v. Crosstown Apparel, Inc.,* 807 F.2d 33 (2d Cir.1986), *Shappley v. State,* 520 S.W.2d 766 (Tex.Crim.App.1974), and *Sharp v. State,* 392 S.W.2d 127 (Tex.Crim.App. 1965), to show that a "security" need not be in writing. The State misplaces its reliance.

Neither *Sulkow, Shappley,* nor *Sharp* involved an "evidence of indebtedness." In each case, the defendant either sold or offered to sell a "security," which did not actually exist. In *Sulkow,* the "Memorandum of Shareholders' Agreement" represented that the complainant would receive "stock shares" for his "capital investment." *See Sulkow,* 807 F.2d at 35. In *Shappley,* an unregistered dealer telephoned the complainant and offered to sell bond subscriptions. *See Shappley,* 520 S.W.2d at 769. In *Sharp,* the defendant offered to sell shares of preferred and common corporate stock, although no stock certificates

were ever printed. *See Sharp,* 392 S.W.2d at 128.

We agree that a person can violate the Act by fraudulently representing that a "security" exists when it does not. But here, appellant never offered to sell nor represented to complainant that appellant was selling shares of stock, a note, a bond, or any other type of security, including an evidence of indebtedness. Appellant represented only that complainant would receive certain returns for his investment in United.

The *Thomas* court explained that an "other evidence of indebtedness" is a similar type of security as notes, bonds, debentures, and mortgage certificates. *Thomas,* 919 S.W.2d at 432. Notes, bonds, debentures, and mortgage certificates are all written instruments that evidence "the owing of a sum of money upon a certain and express agreement." *Id.* Additionally, the *Thomas* court defined "other evidence of indebtedness" as "all contractual obligations to pay in the future for consideration presently received." *See id.* Because notes, bond, debentures, and mortgage certificates are written instruments that acknowledge money owed by agreement and an "other evidence of indebtedness" is a contractual obligation (the owing of money by express agreement), we hold that an "other evidence of indebtedness" like its preceding companion securities must be in writing.

■ We disagree with the State's position that anyone who sells or offers to sell a "security," such as shares of stock, a promissory note, a bond, a mortgage certificate, or another *evidence of indebtedness* will avoid criminal penalties by not providing a written instrument to an investor. Those who fraudulently represent that any security exists in connection with a sale or offer of sale are subject to criminal penalty. *See, e.g., Shappley,* 520 S.W.2d at 769; *Sharp,* 392 S.W.2d at 128.

BLACK'S LAW DICTIONARY 464 (6th ed.1990) (citations omitted).

We are aware that our requiring an "evidence of indebtedness" to be in writing may preclude prosecution under the Act of some people who fraudulently enter into oral investment-related agreements with unwitting investors. But, not all "get rich quick schemes" rise to the level of a "security." *See Bruner,* 463 S.W.2d at 215. Further, we strictly construe the Act's provisions and resolve any doubt on whether an accused has committed an offense for the accused. *See Thomas,* 919 S.W.2d at 430; *Bruner,* 463 S.W.2d at 215. We limit our holding to an "evidence of indebtedness" and do not reach the question whether all "securities" must be written instruments.

 Assuming, without deciding, that the August 2, 1991 transaction is a "security," we must determine whether the State proved beyond a reasonable doubt that appellant sold an "evidence of indebtedness" to complainant on August 2, 1991. On that date, appellant and complainant entered into an oral agreement whereby complainant paid $10,000 to appellant and appellant represented to complainant that United would (1) repay the $10,000 principal within thirty to sixty days, (2) pay complainant five times the investment by October 31, 1991, and (3) pay complainant another five times the investment by October 31, 1992. Appellant never represented that he would forward a written instrument to complainant reflecting his investment in United and the promised returns of principal and profit. And complainant never requested anything in writing reflecting their agreement.

The State introduced into evidence (1) a June 26, 1991 "Letter of Agreement" signed by appellant, on behalf of United, and complainant; (2) complainant's canceled August 2, 1991 check to United for $10,000; (3) a sheet containing appellant's and complainant's handwritten notes from an August 15, 1991 meeting; (4) an Octo-

ber 6, 1991 letter from complainant and his wife to appellant; and (5) appellant's October 8, 1991 written response to the October letter. The State maintains that these documents constitute an "evidence of indebtedness."

The June 26 "Letter of Agreement" predates complainant's August 2 investment and refers to complainant as "investor." This letter never mentions complainant's actual investments. Rather, it shows only the parties' agreement on complainant's kiosk distribution territory. Complainant's canceled August 2 check reflects only that he paid United $10,000 for what he characterized as an "investment."

The notes from the August 15 meeting were appellant's attempt to show complainant and his wife how to prepare a net worth statement to submit to their bank. Complainant testified that appellant's notes indicate that complainant had an "outstanding loan" of $60,000 to United and that United owed him $600,000. No reasonable factfinder could read these notes to reflect United's promise to pay such sums.

Complainant's October 6 letter to appellant refers to appellant's oral promises to return complainant's principal and profits. But, neither the October 6 letter nor appellant's October 8 response is a writing given by appellant to complainant evidencing appellant's or United's indebtedness to complainant. *See, e.g., Brown v. Cole,* 155 Tex. 624, 633, 291 S.W.2d 704, 710–11 (1956).

These documents, along with parol evidence, establish that appellant and complainant entered into an investment transaction on August 2, 1991. But, whether these documents are read separately or together, they do not amount to a written contractual obligation on behalf of appellant, or United, to pay in the future for consideration presently received.[7]

---

**7.** *Cf. Brown,* 291 S.W.2d at 710 (holding that a letter acknowledging receipt of check and setting forth terms for future loan repayment and stock assignment constituted "evidence of indebtedness" because it clearly recited the nature of the transaction).

Although the State presented expert testimony that the August 2 transaction involved an "evidence of indebtedness," the expert predicated his opinion on the legal conclusion that an "evidence of indebtedness" need not be in writing. The State's own expert witness acknowledged that no written document existed as an evidence of indebtedness with respect to the August 2 transaction. And complainant himself testified that the parties never signed a written agreement to memorialize the August 2 transaction. No reasonable factfinder could have found beyond a reasonable doubt that this evidence showed appellant sold or offered to sell an "evidence of indebtedness" on or about August 2, 1991.

We sustain appellant's first and second points of error to the extent they argue that the evidence is legally insufficient to support his conviction. Thus, we need not address appellant's other arguments in his first and second points of error or appellant's third point of error. *See* Tex.R.App. P. 47; *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996).

We reverse the trial court's judgment and enter an order of acquittal.

BRIDGES, J. dissenting.

Dissenting Opinion by Justice BRIDGES.

I respectfully dissent to the majority's conclusion that the evidence in this case is insufficient to show that appellant sold or offered to sell an "evidence of indebtedness" making him subject to prosecution for securities fraud. On original submission, appellant argued that the transaction at issue could not have involved an "evidence of indebtedness" because only a written document could be a security under the Texas Securities Act (the Act). The State disagreed. Without addressing the issue of whether "evidence of indebtedness" must be in writing, this Court on original submission rejected the Texas Supreme Court's definition of "evidence of indebtedness" and concluded that "evi-

dence of indebtedness" had to relate to a mortgage certificate. Because the panel found no "evidence of indebtedness" related to a mortgage certificate, a document similar to a mortgage certificate, or real property, the panel reversed the trial court's judgment.

In vacating this Court's judgment, the Texas Court of Criminal Appeals held that the correct definition of "evidence of indebtedness" is the definition adopted by the Texas Supreme Court in *Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637 (Tex.1977). *Thomas v. State,* 919 S.W.2d 427, 432 (Tex.Crim.App.1996). *Searsy* defines "evidence of indebtedness" as "all contractual obligations to pay in the future for consideration presently received." *Thomas,* 919 S.W.2d at 432; *Searsy,* 560 S.W.2d at 641. Further, the Texas Court of Criminal Appeals has noted that the term "security" should be viewed as flexible enough to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits. *Thomas,* 919 S.W.2d at 432 (quoting *S.E.C. v. Thunderbird Valley, Inc.,* 356 F.Supp. 184, 187 (S.D.S.D.1973)).

In its opinion on remand, the majority narrows the *Searsy* definition and requires evidence of indebtedness to be a *written* contractual obligation to pay in the future for consideration presently received. I disagree with the imposition of this additional requirement.

The majority reaches the conclusion that "evidence of indebtedness" must be in writing by examining the term "other evidence of indebtedness" in the context of the other items which precede it in the list of securities: "note, bond, debenture, mortgage certificate." It is true that "evidence of indebtedness" is a similar *type* of security as a note, bond, debenture, or mortgage certificate. *Thomas,* 919 S.W.2d at 432. However, the majority interprets this to mean that because notes, bonds, debentures, and mortgage certificates are written instruments, "evidence of indebt-

edness" must also be reduced to a written contractual obligation to constitute a security.

The majority narrows the definition of "other evidence of indebtedness" and imposes a writing requirement by examining definitions of other "securities." The majority cites the definitions of note, bond, debenture, and mortgage certificate to support the conclusion that "evidence of indebtedness" must be in writing. However, such a redefinition is unnecessary because the definition of "evidence of indebtedness" is already conclusively established. It means "*all* contractual obligations to pay in the future for consideration presently received." *Thomas,* 919 S.W.2d at 432 (emphasis added). This definition is not inconsistent with the definitions of notes and bonds. A note is an "absolute promise of signer (*i.e.,* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time." *Thomas,* 919 S.W.2d at 431 n. 6 (quoting BLACK'S LAW DICTIONARY 1060 (6th ed.1990)). A bond is a "certificate *or evidence* of a debt on which the issuing company or governmental body *promises to pay* the bondholders a specified amount of interest for a specified length of time, and to repay the loan on the expiration date." *Id.* (quoting BLACK'S LAW DICTIONARY 178) (emphasis added).

I agree that "evidence of indebtedness" is a type of security similar to a note, bond, debenture, or mortgage certificate, but I believe the similarity is that all of these securities embody a promise to pay, whether or not they are reduced to writing. Significantly, the definition of "bond" distinguishes between "a certificate or evidence of a debt," indicating that a bond in the form of a written instrument does not preclude the existence of other "evidence of a debt" that would properly be called a "bond." In the same way, written notes, bonds, debentures, and mortgage certificates do not preclude the existence of "other evidence of indebtedness" that would properly be called a "security."

The *Searsy* definition of "evidence of indebtedness" also supports this view. The *Searsy* definition refers to *all* contractual obligations, not merely written ones. *Thomas,* 919 S.W.2d at 432; *Searsy,* 560 S.W.2d at 641. In a criminal prosecution for violation of securities regulations, a party may be prosecuted in the absence of *any* writing if the offense involves misconduct in a transaction concerning a purely fictional "security." *See Shappley v. State,* 520 S.W.2d 766, 768 (Tex.Crim.App.1974) (criminal liability attached when, in telephone conversation, appellant offered to sell bonds); *Sharp v. State,* 392 S.W.2d 127, 128 (Tex.Crim.App. 1965) (offer to sell nonexistent stock certificates); *Sulkow v. Crosstown Apparel, Inc.,* 807 F.2d 33, 36 (2d Cir.1986) (noting that person who engages in fraud in connection with sale of security may not escape liability under federal securities law simply by refusing to issue written instrument evidencing security). In this context, I do not agree that "evidence of indebtedness" refers only to *written* "contractual obligations to pay in the future for consideration presently received." *See Thomas,* 919 S.W.2d at 432; *Searsy,* 560 S.W.2d at 641. Such a requirement relies too much on the fact that the other items in the definition of "security" are frequently in writing and ignores the fact that notes, bonds, debentures, mortgage certificates, and "other evidence of indebtedness" all involve a "promise to pay."

I believe the appropriate focus in this case is on whether the jury could have found that Thomas was contractually obligated to "pay in the future for consideration presently received." The evidence in this case shows that the complainant Edwards initially gave Thomas a $10,000 check bearing the notation "investment," and Thomas promised to pay back five times that amount, plus principal, within thirty to sixty days. Edwards ultimately invested a total of $60,000 in exchange for Thomas's promise to pay a capital gain. Based on this evidence, a reasonable fact

finder could have found beyond a reasonable doubt that there existed between Thomas and Edwards a "contractual obligation to pay in the future for consideration presently received." *Thomas,* 919 S.W.2d at 432; *Searsy,* 560 S.W.2d at 641. Thus, I would conclude that the evidence is legally sufficient to support Thomas's conviction.

I would therefore address Thomas's challenge to the factual sufficiency of the evidence. When we review challenges to the factual sufficiency of the evidence, we view all of the evidence without the prism of "in the light most favorable to the prosecution." *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In conducting this review, we must be appropriately deferential to the fact finder's determination. *Id.* at 133. We may not "find" facts or substitute our judgment for that of the fact finder. *Id.* We review the fact finder's weighing of the evidence and are authorized to disagree with that determination. *Id.* However, it is not enough that we believe a different result is more reasonable. *Id.* at 135. We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id.*

Considering all the evidence without the prism of "in the light most favorable to the prosecution," it appears that Edwards gave Thomas a $10,000 check and Thomas promised to pay back five times that amount, plus principal, within thirty to sixty days. Edwards invested a total of $60,-000 in exchange for Thomas's promise to pay a capital gain. As discussed above, Thomas argues that this transaction did not involve a "security" as defined by the Act. Nevertheless, I would conclude this evidence is factually sufficient to establish a "contractual obligation to pay in the future for consideration presently received" between Thomas and Edwards. *Thomas,* 919 S.W.2d at 432; *Searsy,* 560 S.W.2d at 641. Thus, the verdict in this case is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 135.

As to Thomas's argument that the documents in evidence could not be "securities" because they were not negotiable or transferable, he has cited no authority imposing such a requirement. Moreover, the *Searsy* definition does not mention negotiability or transferability as part of the analysis for determining whether there is a "security" in the form of "evidence of indebtedness." Under these circumstances, it does not appear that an evaluation of the negotiability or transferability of the security at issue is a necessary step in determining the sufficiency of the evidence to support Thomas's conviction. Accordingly, I would overrule Thomas's first and second points of error.

Thus, I would reach Thomas's remaining point complaining that the trial court abused its discretion in permitting the State's expert witness, John Morgan, to testify concerning the existence of a security in this case because the prejudicial effect of Morgan's testimony outweighed its probative value and the testimony improperly stated a legal conclusion.

As a prerequisite to presenting a complaint for appellate review, the record must show that appellant presented the trial judge with a timely objection stating the specific grounds for the ruling desired unless the grounds are apparent from the objection's context. *See* Tex.R.App. P. 33.1(a). In this case, when the State offered Morgan as an expert, counsel for appellant stated that he had "no objection." Further, appellant's counsel made no objection to Morgan's testimony that the transaction at issue, including Thomas's oral representations, constituted the offer and sale of a security, specifically evidence of indebtedness. Thus, appellant has not preserved his complaints concerning Morgan's expert testimony for our review. *See* Tex.R.App. P. 33.1; *Cox v. State,* 523 S.W.2d 695, 698 (Tex.Crim.App.1975). Accordingly, I would overrule appellant's

third point of error and affirm the judgment of the trial court.