Jimmy Wayne THOMAS, Appellant,

v.

STATE of Texas.

No. 108–00.

Court of Criminal Appeals of Texas.

Nov. 21, 2001.

Paul G. Kratzig, Corpus Christi, for appellant.

Anne B. Wetherholt, Assist. DA, Dallas, Jeffrey L. Van Horn, First Assist. St. Att., Matthew Paul, State's Attorney, Austin, for state.

## OPINION

PRICE, J., delivered the unanimous opinion of the Court.

A jury found the appellant guilty of securities fraud. The Court of Appeals reversed the conviction and concluded that the term other "evidence of indebtedness", as used in the definition of security in the Texas Securities Act, requires a writing. We granted review to determine whether the term other "evidence of indebtedness" requires a written instrument.[1] Because the cases that we have found all involve some form of writing, the term is part of a group of securities that are all written instruments, and the common understanding of the term seems to envision a writing, we hold that the term other "evidence of indebtedness" requires a writing. Accordingly, we shall affirm the Court of Appeals.

## FACTS

The appellant met Don Edwards through Sunday school classes at their church. Through his corporation United Media Group, Inc. (UMG), the appellant attempted to develop and market electronic kiosks that could dispense videotapes.

---

1. We granted review of three grounds, the first presented by the District Attorney and the other two by the State Prosecuting Attorney: 1) The Court of Appeals erred under the law governing statutory construction by interpreting the Texas Securities Act to require that "other evidence of indebtedness" be written. 2) Whether a written instrument is necessary to constitute an "evidence of indebtedness," as provided for in the definition of the term "security" in Vernon's Ann. Civ. St. art. 581–4(A). 3) Whether the Court of Appeals erred in its review of the sufficiency of the evidence by employing a more restrictive definition of the term "evidence of indebtedness" than the jury was entitled to use. Because the grounds for review were granted before our decision in *Ex parte Taylor*, 36 S.W.3d 883 (Tex.Crim.App.2001), *Taylor* does not apply.

The appellant suggested that Edwards become a salesman for UMG and further convinced Edwards to invest in the corporation. The appellant said that Edwards could expect the return of his original principal in thirty to sixty days, would receive five times the original investment in several months, and would receive an additional five times his investment within a year. Throughout June of 1991, Edwards invested a total of $50,000. The only document signed by the appellant and Edwards was a June 26, 1991, letter of agreement that described Edwards's kiosk distribution territory. The letter of agreement mentions a $50,000 equity deposit for the territory, but nowhere mentions Edwards's actual investments.

About a month later, the appellant informed Edwards that further investment, up to $20,000, had become available because a family in Tennessee needed the return of its principal immediately. On August 2, 1991, Edwards invested an additional $10,000. Like the other investments, neither the appellant nor UMG signed any agreement concerning the investments; issued any shares, notes, or bonds; or paid Edwards any profits on his investments. It was later discovered that the appellant had filed for personal bankruptcy and had used funds invested in UMG to cover his personal expenses. The appellant disclosed neither fact to Edwards.

The appellant was indicted and later convicted for violations of the Texas Securities Act concerning the August 2, 1991, transaction. TEX.REV.CIV. STAT. art. 581. Specifically, a jury found the appellant guilty of two counts of securities fraud in "the sale or offer of sale" of a security, namely an "evidence of indebtedness", by: 1) failing to disclose that he had previously spent funds invested in UMG for purposes unrelated to UMG and 2) failing to disclose that he had filed for personal bankruptcy.

On direct appeal, the Court of Appeals reversed the trial court's judgment and entered a judgment of acquittal in an unpublished opinion. *Thomas v. State*, No. 05–92–01844–CR, 1994 WL 605946 (Tex. App.—Dallas Oct. 31, 1994) (not designated for publication). The Court of Appeals rejected a definition of the term "evidence of indebtedness" used by the Texas Supreme Court in *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637, 641 (Tex. 1977) (adopting the definition of "evidence of indebtedness" from *United States v. Austin*, 462 F.2d 724, 736 (10th Cir.1972)), and held instead that the term referred to a mortgage certificate. *Thomas*, No. 05–92–01844–CR, slip op. at 10.

We reversed the Court of Appeals decision upon the State's petition for discretionary review and adopted the *Searsy* definition of "evidence of indebtedness". We held that an "evidence of indebtedness" was "all contractual obligations to pay in the future for consideration presently received." *Thomas v. State*, 919 S.W.2d 427, 432 (Tex.Crim.App.1996) (*Thomas II*). We remanded the case to the Court of Appeals with instructions to consider whether an "evidence of indebtedness" requires a writing under the act.

On remand, the Court of Appeals held that, because the particular provision of the Act under which Thomas was convicted is penal in nature, the statute should be narrowly construed. *Thomas v. State*, 3 S.W.3d 89, 92–93 (Tex.App.—Dallas 1999) (*Thomas III*). The Court of Appeals then held that, under the Texas Securities Act, an "evidence of indebtedness" requires a writing. *Id.* at 95. The Court of Appeals relied largely on the common law doctrine of *ejusdem generis* and on our observations from *Thomas II* that the Act's purpose and context limits how the term is construed. *Id.* at 93. It concluded that,

because "evidence of indebtedness" is grouped with written instruments that all acknowledge the owing of money by agreement, an "evidence of indebtedness" must also be in writing. *Id.* at 94. Since there was no writing constituting an "evidence of indebtedness" admitted into evidence, and because there is no evidence that the appellant offered to sell such an instrument, the Court of Appeals once again entered a judgment of acquittal. *Id.* at 96.

### DISCUSSION

The Texas Securities Act defines "security," in part, as:

> any share, stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or *other evidence of indebtedness,* any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. . . .

TEX.REV.CIV. STAT. art. 581–4(A) (emphasis added).

### Strict Construction and Ejusdem Generis

Before addressing the question of whether a writing is required, several related issues need to be addressed.[2]

■ The State argues that the Court of Appeals's use of *ejusdem generis* was inappropriate because the doctrine had not been discussed since Judge Davidson's dissenting opinion in *Dossey v. State,* 165 Tex.Crim. 652, 310 S.W.2d 321 (1958). We disagree that the use of *ejusdem generis* was inappropriate.

■ *Ejusdem generis* means "of the same kind, class, or nature." BLACK'S LAW DICTIONARY 464 (6th ed.1990). The doctrine states that when interpreting general words that follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind. *Lefevers v. State,* 20 S.W.3d 707, 711 (Tex.Crim.App.2000); *Perez v. State,* 11 S.W.3d 218, 221 (Tex. Crim.App.2000).

■ In *Thomas II,* we tacitly approved of the *ejusdem generis* doctrine in determining the meaning of "evidence of indebtedness" without using that exact phrase. We viewed other "evidence of indebtedness" as "expanding upon the grouping 'note, bond, debenture, mortgage certificate.' In other words, notes, bonds, debentures and mortgage certificates are types of evidence of indebtedness, but 'other' evidence of indebtedness might also fall within the act." *Thomas II,* 919 S.W.2d at 430. Furthermore, we emphasized that the definition was "limited by the purposes of the Act itself and by the context in which it appears . . . . an evidence of indebtedness is a similar *type* of security as a note, bond, debenture, and mortgage certificate." *Id.* at 432. The word type is similar to kind, class, or nature, and our

---

2. The State argues that the Securities Act should be liberally construed based in part on Penal Code section 1.05(a) and Government Code section 312.006(b). We need not address these arguments as the result we reach today is not dependent on either a liberal or strict construction.

analysis is consistent with *ejusdem generis*, which gives "effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words." *Lefevers*, 20 S.W.3d at 711–12. The application of *ejusdem generis* was not improper.[3]

Finally, relying on our holding in *Vernon v. State*, 841 S.W.2d 407 (Tex.Crim. App.1992), the State argues that reviewing courts must not employ definitions of relevant statutory words that are different from or more restrictive than the jurors are legally entitled to use. In *Thomas II*, however, we held that within the context of the definition of security, an "evidence of indebtedness" must be of a similar *type* of security as a note, bond, or debenture. *Thomas II*, 919 S.W.2d at 430. "evidence of indebtedness" is grouped together with terms that have both technical and judicial meanings within securities law. *Cf. Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990) (discussing definition of the term note); *Thomas II*, 919 S.W.2d at 432 n. 7 (noting that an "evidence of indebtedness" must be an investment to fit within the act); LOSS & SELIGMAN, SECURITIES REGULATION, v. II p. 962 (3d ed.1989) (suggesting that like the term note, "evidence of indebtedness" might be so broad as to preclude a literal reading and suggesting that the criteria developed for "notes" may be helpful). While "evidence of indebtedness" may have a broad

meaning, it nevertheless has meaning within the particular subject matter of investments and securities law; *Vernon*, therefore, does not apply. *Cf. Medford v. State*, 13 S.W.3d 769, 772 (Tex.Crim.App. 2000) (holding that the word arrest has an established and technical meaning that precluded the application of *Vernon*); *Thomas II*, 919 S.W.2d at 430, 432 n. 7 (holding that an "evidence of indebtedness" must be of a similar type of security as notes, bonds, debentures, and mortgage certificates and requiring an "evidence of indebtedness" to be an investment).

### Writing Requirement

Because of the similarities between 15 U.S.C. § 77(b)(1) (Federal Securities Act of 1933) and article 581–4(A), Texas courts often look to federal cases interpreting the Federal Securities Act of 1933 for guidance in interpreting the Texas Securities Act. *See Searsy*, 560 S.W.2d at 639 (noting "The term[ ] 'evidence of indebtedness' appear[s] to have been taken from an almost identical definition of 'security' in the Federal Securities Act of 1933...."); *Grotjohn Precise Connexiones Int'l v. J.E.M. Fin., Inc.*, 12 S.W.3d 859, 868 (Tex. App.—Texarkana 2000, no pet.) (noting that because of the similarity to the Texas Act, Texas courts may look to the Federal Securities Act); *Campbell v. C.D. Payne & Geldermann Sec.*, 894 S.W.2d 411, 417 (Tex.App.—Amarillo 1995, writ denied) (same); *cf. Thomas II*, 919 S.W.2d at 431–32 (citing to numerous federal cases

---

3. We are aware of our decision in *Atwood v. State*, 135 Tex.Crim. 543, 121 S.W.2d 353, 359–60 (1938) (op. on reh'g), in which we said the definition of security renders *ejusdem generis* inapplicable. *Atwood*, however, dealt with an oil and gas lease and not an "evidence of indebtedness". Moreover, we based our statement concerning *ejusdem generis* on the portion of the definition that reads, "or any other instrument commonly known as a security, whether similar to those herein referred to or not." *Id.* at 359–60. We think the phrase, "whether similar to those herein referred to or not," refers to "any other instrument commonly known as a security." It does not modify an "other evidence of indebtedness." To the extent that this language in *Atwood* is inconsistent with our holdings today and in *Thomas II*, it is disavowed.

interpreting 15 U.S.C. § 77). In addition to Texas sources, we will also look to federal cases and materials for guidance.

■ We have not found a federal or Texas case directly dealing with a writing requirement for the term "evidence of indebtedness". Significantly, we have found no cases where an oral agreement alone was characterized as an "evidence of indebtedness". To the contrary, the cases and secondary materials that we have found all deal with some form of written instrument. *See, e.g., S.E.C. v. G. Weeks Sec., Inc.,* 678 F.2d 649, 653 (6th Cir.1982) (noting district court could have found that a stand-by contract, when considered with a commitment letter, was an "evidence of indebtedness"); *Austin,* 462 F.2d at 736 (holding that letter of commitment was an "evidence of indebtedness"); *LTV Federal Credit Union v. UMIC Gov't Sec., Inc.,* 523 F.Supp. 819, 830–31 (N.D.Tex.1981) (concluding standby commitment contracts were not evidence of indebtedness); *United States v. Attaway,* 211 F.Supp. 682, 685 (W.D.La.1962) (holding uncashed checks, when considered in light of oral representations, were evidence of indebtedness); *Searsy,* 560 S.W.2d at 642 (holding commodity option contracts to be evidence of indebtedness because of representations made in the defendant's literature); *Adickes v. Andreoli,* 600 S.W.2d 939, 944–45 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ dism'd) (holding a written receipt for funds in the purchase of a partnership interest did not constitute an "evidence of indebtedness"); *King Commodity Co. of Texas, Inc. v. State,* 508 S.W.2d 439, 445 (Tex.App.—Dallas 1974, no writ) (holding that option certificates, when considered in the light of advertising brochures, constituted an "evidence of indebtedness" under the Texas Securities Act).

We find the case of *S.E.C. v. Addison,* 194 F.Supp. 709 (N.D.Tex.1961), to be the closest case to the one at bar. In *Addison,* Addison and his associates obtained money from lenders for the operating and marketing costs of a machine that turned unmarketable uranium into marketable ore. *Id.* at 715. Addison and his agents orally represented to various lenders that the lenders would participate and share in the millions of dollars in profits that would be made from various ventures, in addition to being repaid the amount loaned in one year plus interest. *Id.* Most of the lenders received written notes, signed by Addison, acknowledging the loan and bearing a 10% interest rate. *Id.* at 716. Addison, however, neither issued nor delivered to some later lenders any "note or any instrument in writing evidencing such loan transaction or the promised participation and sharing in the profits to be made." *Id.* Addison's ventures were ultimately unprofitable, and the loans and investments were not repaid.

The district court found that Addison had sold securities in the form of notes, evidence of indebtedness, certificates of interest and participation in profit-sharing agreements, and investment contracts. *Id.* at 721–22. The court characterized the personal loan notes issued by Addison as both notes and evidence of indebtedness. *Id.* at 721 ("The personal loan notes issued and delivered to the lenders are also securities by reason of being an evidence of indebtedness."). The court characterized the oral representations made to the later lenders who did not receive a note or writing as investment contracts and not as evidence of indebtedness. *Id.* at 722. "The oral agreements the defendants made with the lenders ... to the effect that the lenders ... would participate and share in the millions of dollars of profits that would be made by the defendants from their mining and other operations are investment contracts, and, as such, are securities." *Id.* (citing *Securities Ex-*

*change Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)). Unlike the personal loan notes that were characterized as both notes and evidence of indebtedness, the oral agreements were characterized only as investment contracts. *Id.* at 721–22. This suggests that some form of writing is required for a security to be characterized as an "evidence of indebtedness".

In addition to case law, there are scholars who indicate that an "evidence of indebtedness" requires a writing. In explaining the coverage of the Federal Securities Act, Professor Loss observed that an "evidence of indebtedness" requires a writing by its own terms. "As we have seen, a writing is not essential for either an 'investment contract' or a 'transferable share' or an 'interest ... commonly known as a security.' An 'evidence of indebtedness' does by its terms require a writing, but when a writing is available this phrase is sometimes a handy anchor to windward." Loss, *Securities Regulation,* 488–89 (2d ed.1961); *cf. Thomas II,* 919 S.W.2d at 430 ("Neither does strict construction mean that we ignore the plain meaning of the terms."); *Boykin v. State,* 818 S.W.2d 782 (Tex. Crim.App.1991). Also, Professors Bromberg and Lowenfels have adopted the Fifth Circuit definition of an "evidence of indebtedness" as used in *U.S. v. Jones,* 450 F.2d 523, 525 (5th Cir.1971).[4] BROMBERG AND LOWENFELS, SECURITIES FRAUD & COMMODITIES FRAUD, v.1 § 4.6(414) (1981). The term "evidence of indebtedness" "embraces only such documents as promissory notes which on their face establish a primary obligation to pay the holders thereof a sum of money." *Id.*

Furthermore, we stated in *Thomas II* that the *Searsy/Austin* definition of "evidence of indebtedness" was consistent with other federal cases. *Thomas II,* 919 S.W.2d at 432. We cited *S.E.C. v. Thunderbird Valley, Inc.,* 356 F.Supp. 184, 187 (D.S.D.1973), for this proposition and observed that the *Thunderbird* court viewed "evidence of indebtedness" as being a self-defining term, requiring no further definition. *Id.* If a term is self-defining, requiring no further definition, this suggests a common understanding of that term.

As the *Searsy* court pointed out, the term "evidence of indebtedness" in the Texas Securities Act appears to have been taken from the Federal Securities Act of 1933. *Searsy,* 560 S.W.2d at 639. A review of *Black's Law Dictionary* from 1933 does not yield a definition of "evidence of indebtedness," but it does have a definition of evidence of debt. The 1933 definition of evidence of debt was "a term applied to written instruments or securities for the payment of money, importing on their face the existence of a debt." BLACK'S LAW DICTIONARY 702 (3d ed.1933). This same definition appeared in the earlier second edition and the later fourth edition. BLACK'S LAW DICTIONARY 658 (4th ed.1968); BLACK'S LAW DICTIONARY 449 (2d ed.1910). Thus, in the immediate edition before the Securities Act of 1933, in the edition of the Act's actual enactment, and in the next edition after enactment (some 35 years later), the same definition of evidence of debt remained, and this definition envisioned some form of written instrument. Although evidence of debt is not the exact term, the terms are sufficiently similar for us to glean guidance. Based on the definition in these editions, we think that the

---

4. *Jones* deals with the National Stolen Property Act. The *Austin* court, which is the source of the *Searsy* definition of "evidence of indebtedness," also looked to the National Stolen Property Act for guidance in interpreting the term in the Securities Act of 1933. *Austin,* 462 F.2d at 736.

common understanding implied by *Thunderbird Valley* entails a written instrument.[5]

■ Finally, the conclusion that a writing is required is consistent with our instructions and analysis in *Thomas II*. We said that the definition was limited not only by the purpose of the Act, but also by the context in which it appears. *Thomas II*, 919 S.W.2d at 432. The term appears in a group of four other terms that are all some form of written instrument that acknowledge money owed by agreement. *See id.* at 431 n. 6. In context, the term "evidence of indebtedness" expands upon the terms note, bond, debenture, and mortgage certificates. *See id.* at 430. It appears that an "evidence of indebtedness" need not necessarily take on the exact form of these other terms, as it expands upon them, but it is similar to them in that it requires some writing that indicates a contractual obligation to pay in the future for consideration presently received. *See id.* at 432.

■ Based on the terms of the statute, as well as the persuasive authorities cited above, we hold that a written instrument is required for an "evidence of indebtedness" under the Texas Securities Act. The exact form the writing takes, however, is not crucial. *See S.E.C. v. Joiner Leasing Corp.*, 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (noting the reach of the Federal Securities Act does not stop with the obvious, but extends to novel and irregular devices and instruments as well); *Muse v. State*, 137 Tex. Crim. 622, 132 S.W.2d 596, 597 (1939)

(holding a security need not be a valid or perfect instrument for criminal liability). Furthermore, the context and the circumstances surrounding the transaction may be examined in determining whether a writing constitutes an "evidence of indebtedness." *See* TEX.REV.CIV. STAT. art. 581–4 ("The following terms shall, unless the context otherwise indicates, have the following respective meanings …"); *Bruner*, 463 S.W.2d at 214 (holding that the surrounding circumstances will be reviewed to determine if an instrument is a security); *King Commodity Co. of Texas, Inc.*, 508 S.W.2d at 445 (considering representations made in advertising literature to determine if option certificates were securities).

■ We also emphasize that our holding today should not be read to mean that an actual, physical exchange of a writing is required in order for there to be a violation of the Texas Securities Act concerning an "evidence of indebtedness." When a defendant sells or offers to sell an "evidence of indebtedness" that does not actually exist or was never actually issued, he is still subject to criminal penalty. *See Shappley v. State*, 520 S.W.2d 766, 768–69 (Tex.Crim.App.1974); *Sharp v. State*, 392 S.W.2d 127, 128 (Tex.Crim.App.1965).

The State and the amicus curiae brief make several arguments against a writings requirement. The State primarily relies on Justice Bridges's dissent. He argued that the definition of "evidence of indebtedness" is "all contractual obligations," which would include oral obligations. *See Thomas III*, 3 S.W.3d at 96–97 (Bridges, J., dissenting). Furthermore,

---

**5.** *Thunderbird Valley* relied on *Farrell v. United States*, 321 F.2d 409, 417 (9th Cir.1963), for the proposition that the term "evidence of indebtedness" was self-defining and required no further definition. *Thunderbird Valley*, 356 F.Supp. at 187. *Thunderbird Valley* was decided under the 1968 fourth edition of Black's Law Dictionary, while *Farrell* was decided under the 1933 third edition of Black's Law Dictionary. We further note that both cases dealt with written instruments. *Farrell*, 321 F.2d at 415–16; *Thunderbird Valley*, 356 F.Supp. at 187–88.

the "similarity [between notes, bonds, debentures, and mortgage certificates] is that all of these securities embody a promise to pay, whether or not they are reduced to writing." *Id.* at 97. The amicus brief also argues that the definition of "all contractual obligations" would include oral obligations. In addition, a writings requirement does not consider internet and electronic transactions. Because there is a growing trend to buy and sell securities electronically, many transactions that would normally be covered by the Act as an "evidence of indebtedness" would now be outside the reach of the statute.[6] We disagree with these arguments.

It is true that a common thread that runs through the group of notes, bonds, debentures, and mortgage certificates is that they embody a promise to pay. They also, however, are embodied by some form of writing. *See Thomas II,* 919 S.W.2d at 431 n. 6. Furthermore, the fact that we have found no case that does not have some form of writing evidencing the indebtedness since passage of the Federal Securities Act of 1933 suggests to us that the one strand of a promise to pay is not the only important characteristic that these terms share.

■ As for a literal reading of the definition of "evidence of indebtedness," we observe that not only do cases criticize a literal interpretation of the *Austin/Searsy* definition, there are also other authorities that caution against a literal interpretation of the term itself. *See Cocklereece v. Moran,* 532 F.Supp. 519, 529 (N.D.Ga.1982) (noting a literal application would turn all bilateral contracts into securities); *LTV Fed. Credit Union v. UMIC Gov't Sec., Inc.,* 523 F.Supp. 819, 830–31 (N.D.Tex. 1981) (noting a literal application would turn all commercial notes into securities); *Plains Elec. Generation and Transmission Coop., Inc. v. New Mexico Pub. Util. Comm'n,* 126 N.M. 152, 967 P.2d 827, 832–33 (1998) (agreeing with *Cocklereece* and *LTV* criticisms of *Austin* definition); Loss & SELIGMAN, *supra* at 962 (suggesting that the term "evidence of indebtedness" may be so broad as to preclude a literal reading); *cf. Thomas II,* 919 S.W.2d at 432 n. 7 (noting that an "evidence of indebtedness" must be an investment). The Tenth Circuit has also shied away from a literal interpretation of the definition. *See McGovern Plaza Joint Venture v. First of Denver Mortgage Investors,* 562 F.2d 645, 648 (10th Cir.1977) (holding that loan commitment letters were not part of a large scale fraud operation and not securities). Although these cases's criticisms focus primarily on a literal application turning all bilateral contracts into securities despite having a commercial instead of an investment character, they do stand for the proposition that courts are reluctant to apply the *Austin/Searsy* definition literally. This fact, combined with no cases that have found an "evidence of indebtedness" based only on oral agreements,[7] lead us to reject this literal interpretation.

---

6. In a supplemental brief, the State directs our attention to the recent Supreme Court case of *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.,* 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001), where the Supreme Court held that oral contracts for sale are covered under the Securities Exchange Act of 1934. However, we find this case to be inapposite as the case does not deal with an "evidence of indebtedness." Furthermore, nothing in our opinion today should be read to mean that oral contracts for sale are outside the coverage of the Texas Securities Act; the issue we decide today is whether an "evidence of indebtedness" requires a writing.

7. The closest support for the position against a writing requirement that we have found is a section in Am.Jur. discussing notes and evidence of indebtedness. *See* 69a AM.JUR. 2D *Securities Regulation State* § 30 (1993). This section states, "Arrangements do not have to

Finally, we do not think that our decision today paves the way for internet securities fraud. Confirmation of any electronic sale or offer of sale of a security may still be printed or even saved to a disk. Also, the definition of "in writing" found in Government Code section 312.011(17) includes "any representation of words, letters, or figures, whether in writing, printing, or other means." Nothing in this definition precludes electronic representations.

### Conclusion

The Court of Appeals held that an "evidence of indebtedness" requires a writing under the Texas Securities Act. We have reached the same conclusion today. The judgment of the Court of Appeals is affirmed.

be in writing to be securities...." *Id.* Only one case is cited for this proposition, *Jenkins v. Jacobs,* 748 P.2d 1318 (Colo.App.1987). *Jenkins,* however, deals with and discusses only an investment contract; an "evidence of indebtedness" did not play a role in this decision. *See Jenkins,* 748 P.2d at 1320.