NO. 07-09-0152-CR
NO. 07-09-0153-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 11, 2009
_____

JOHN BROWN GRIFFITH,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NOS. 7300 and 7301; HON. STEVEN EMMERT, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant John Brown Griffith appeals from the trial court's judgments adjudicating him guilty of the offenses of indecency with a child and sentencing him to twenty years in prison. Appellant had pled guilty to the original charges and was placed on probation in March of 2007. The State filed a motion to proceed with his adjudication of guilt because he purportedly violated that term of his probation barring him from "frequent[ing] areas where children congregate." The provision was violated, according to the State, when he

visited the Lovett Library on January 12, 2008. The trial court found the allegation to be true and adjudicated appellant guilty of indecency with a child. Appellant contends on appeal that the evidence is factually insufficient because the State proved that he visited the library only one time, and doing so one time does not fall within the ambit of "frequent." We agree and reverse the judgments.

We initially note that a typical factual sufficiency review is inapplicable to a revocation appeal. *Cherry v. State,* 215 S.W.3d 917, 919 (Tex. App.–Fort Worth 2007, pet. ref'd). Instead, the decision is reviewed under the standard of abused discretion. *Wilkins v. State,* 279 S.W.3d 701, 703-04 (Tex. App.–Amarillo 2007, no pet.). And when determining if the trial court abused its discretion, we view the evidence and inferences therefrom in a light most favorable to the trial court's decision. *Id.* at 704. On the other hand, decisions implicating questions of law do not receive similar deference.

Next, the only condition of appellant's community supervision which he allegedly violated required that he "not frequent areas where children congregate such as: fast food establishments, parks, playgrounds, sites of school functions, shopping malls, video arcades, or skating rinks . . . ." As previously mentioned, appellant breached this restriction, according to the State, by entering the Lovett Library on January 12, 2008. So, disposition of this appeal is dependent upon the meaning of "frequent." According to appellant, the word connotes multiple instances, as opposed to one, and because the State failed to prove that he went to the library on more than one occasion after being placed on probation, it failed to satisfy its burden of proof.[1]

---

[1]The record contains evidence that appellant had entered the library on other occasions. However, when he did so went unmentioned. And because those instances may or may not have occurred before the conditions of probation were imposed, they constitute no evidence of his violating those conditions. In other words, until the State proves when they happened, one cannot conclude that they happened after appellant was obligated to abide by the restriction.

Appellant's position is supported by case law. For instance, in *Stovall v. State,* 683 S.W.2d 891 (Tex. App.–Fort Worth 1985, pet. ref'd), the court was asked to determine whether a one time appearance in a bar violated a term of probation directing Stovall against "frequenting" places where alcoholic beverages were sold. The court held that it did not. *Id.* at 893. It so ruled due to the common meaning of the word. According to it, "frequent" encompassed "an event that happen[ed] more than one time or more than a single occurrence." *Id.* That interpretation also happens to comport with the one found in the Merriam-Webster Collegiate Dictionary, wherein the word is interpreted as meaning "to associate with, be in, or resort to *often* or *habitually*." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 500 (11th ed. 2003) (emphasis added). The *Stovall* court held that a single episode of being in a bar could not support the revocation of Stovall's probation. *Id.* We see no reason to deviate from this precedent and the plain meaning assigned to the word "frequent."

Nonetheless, the State proposed that because appellant, during this one episode, not only entered the library to use a computer located across from a 15-year-old girl but also sat next to stairs which led to a children's area upstairs, his actions showed multiple instances of his being where kids congregate. We find the argument interesting though unpersuasive. If accepted, it would also support the notion that with each step appellant took towards the computer and stairwell, he committed additional violations since with each step he was geographically in a different place in relation to the children. Reason counsels against splitting hairs so finely. Indeed, the *Stovall* court focused on the episode or event as a whole as opposed to instances of conduct within the event to assess the existence

3

of a potential violation. More importantly, the condition before us itself defined the geographic scope contemplated by the word "area" when it added "fast food establishments, parks, playgrounds, sites of school functions, shopping malls, video arcades, or skating rinks" as examples of the restricted areas. Viewed through the lens of *ejusdem generis*, *see Thomas v. State,* 65 S.W.3d 38, 41 (Tex. Crim. App. 2001) (defining the principle as one interpreting general words that follow an enumeration of particular or specific things by confining the meaning of the general words to things of the same kind), those examples describe a location in general or as a whole, not specific parts of the whole. So we cannot say that the State's position accurately interpreted the restriction. In view of this, we opt not to construe the restriction here in a way different than what was encompassed within the plain meaning of the words actually used.

In sum, the State failed to prove that appellant "frequent[ed]" a place where children congregated by simply showing that he was once in a library after being extended community supervision. Thus, we reverse the judgments adjudicating appellant's guilt and dismiss the motions to proceed with the adjudication of guilt. *See Garcia v. State*, 571 S.W.2d 896, 900 (Tex. Crim. App. 1978) (reversing judgment and dismissing motion to revoke).

Brian Quinn
Chief Justice

Publish.

4