Jimmy Wayne THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 0159–95.

Court of Criminal Appeals of Texas, En Banc.

April 3, 1996.

Paul G. Kratzig, Andrew L. Quittner, Corpus Christi, for appellant.

Pamela Sullivan Berdanier, Assist. Dist. Atty., Dallas, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

A jury found appellant guilty of fraud in the sale of securities and the trial court assessed punishment at ten years, probated, and a $5000 fine. Appellant was ordered to pay $60,000 restitution and serve 180 days in county jail as conditions of probation. The Court of Appeals reversed the judgment of the trial court and ordered a judgment of acquittal on the ground that the evidence was insufficient to establish that appellant offered to sell or sold an "evidence of indebtedness" within the meaning of the Texas Securities Act. *Thomas v. State,* No. 05–92–01844–CR slip op., 1994 WL 605946 (Tex.App.—Dallas Oct. 31, 1994) (unpublished). The State filed a petition for discretionary review urging us to consider this holding. We granted the State's petition.[1]

Appellant persuaded Don Edwards to invest in United Media Group, Inc. ("United"). Edwards' investments were ostensibly to help secure funding and pay United's business expenses. Appellant told Edwards he could expect a return of his principal in thirty to sixty days and that he would reap five times his original investment within several months and another five times his investment within a year. Edwards invested a total of $60,000 in United, but was not issued any shares of stock. No written agreement was signed until Edwards had already invested $50,000. Edwards' principal was never returned and he never received any profits. Testimony at trial established that Edwards' money was used to pay appellant's personal living expenses. In addition, appellant failed to disclose to Edwards that he had filed for personal bankruptcy.[2]

Appellant was indicted under the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1 *et seq.* (hereinafter, "the Act"), for fraud in the sale of a security, Tex.Rev.Civ. Stat.Ann. art. 581–29(C). The term "security" is defined under the Act as:

> any share, stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or *other evidence of indebtedness,* any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by

---

1. We granted the following grounds for review:
   1. The Dallas Court of Appeals' strict construction of the Texas Securities Act violates the doctrine of stare decisis, prior decisions of this Court, and the Penal Code.
   2. The Dallas Court of Appeals' opinion is erroneous because its grammatical construction of the Securities Act is illogical, unworkable, and contrary to the legislative intent.
   3. The Court of Appeals erred in holding that the Texas Securities Act requires that a security be a written document which relates to a mortgage certificate.
   4. The Court of Appeals erred in holding that the evidence is insufficient in that the transaction involved does not constitute a

   security and an evidence of indebtedness under the Texas Securities Act.
   5. The Court of Appeals erred in holding that the trial court committed fundamental error in instructing the jury that the term "evidence of indebtedness" means "all contractual obligations to pay in the future for consideration presently received" as this definition was expressly approved by the Texas Supreme Court in *Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637 (Tex.1977).

2. The first paragraph of the indictment alleged fraud by expending Edward's investment for purposes unrelated to United; the second paragraph alleged fraud by failing to disclose that appellant had filed for personal bankruptcy.

an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the State Board of Insurance when the form of such policy or contract has been duly filed with the Board as now or hereafter required by law.

TEX.REV.CIV.STAT.ANN. art. 581–4(A) (emphasis added). The indictment alleged the security was an "evidence of indebtedness." The jury instructions defined "evidence of indebtedness" as "all contractual obligations to pay in the future for consideration presently received."

Before the Court of Appeals appellant claimed the evidence was insufficient to show that he sold an "evidence of indebtedness" because a written document is required to constitute a security under the Act. The Court of Appeals[3] did not address appellant's contention as to a written document, but held the evidence insufficient for other reasons.[4] The Court of Appeals pointed to the fact that individual terms in the definition of security were set apart by commas, but the phrase "evidence of indebtedness" was linked with "mortgage certificates." *Thomas*, slip op. at 9. The Court reasoned that the phrase "mortgage certificate or other evidence of indebtedness" should be viewed singularly so that "evidence of indebtedness" enlarged upon the term "mortgage certificate" and "mortgage certificate" restricted the term "evidence of indebtedness." *Id.* Therefore, the Court of Appeals held that "evidence of indebtedness" under the Act "must be related or similar to a mortgage certificate." *Id.* at 10. Applying this definition, the Court of Appeals further held that since the transaction did not relate "to a mortgage certificate, a document similar to a mortgage certificate or real property," the State had failed to meet its burden of proof. The Court of Appeals noted that the definition of "evidence of indebtedness" contained in the jury instructions was the same as that applied by the Texas Supreme Court in *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637 (Tex.1977), but rejected that construction as too liberal for use in a criminal context. *Id.* at 11.

In a concurring opinion Justice Barber criticized the Court of Appeals for resting its construction on "the lack of a comma." *Thomas*, slip op. at 3 (Barber, J., concurring). Justice Barber viewed the provision as much broader:

> The Texas Legislature could not have meant to limit the phrase "other evidence of indebtedness" simply to mortgage certificates or some other type of transaction involving real property. It is much more logical to interpret the phrase "mortgage certificate or other evidence of indebtedness" to mean a mortgage certificate is one type, but not the only type, of an evidence of indebtedness. To read the phrase any other way would be to give no meaning to the word "other."

*Id.* Applying a four part test applied by federal courts in determining whether a "note" is a security under the federal Securities Exchange Act of 1934, Justice Barber concluded there was insufficient evidence of indebtedness in this case.

---

**3.** The Court of Appeals' opinion was a one-judge plurality, authored by Justice Maloney. Justice Whittington concurred only in the judgment, without written opinion, and Justice Barber concurred in the judgment only and filed a separate written opinion.

**4.** In its petition for discretionary review, the State took issue with what it viewed as the Court of Appeals's implication that a writing was required to be a "security" under the Act. The Court of Appeals issued a supplemental opinion discrediting the State's interpretation of its holding as requiring a written document under the Act, stating "although [appellant] argued a written document was required, *neither Justice Barber nor I stated, implied, or even referred to a requirement of a written document.*" *Thomas v. State*, No. 05–92–01844–CR slip op. at 4, 1995 WL 33627 (Tex.App.—Dallas Jan. 27, 1995) (supplemental op.) (unpublished) (emphasis added); *see also* Tex.R.App.P. 101.

## I.

The State contends the Court of Appeals erred in strictly construing article 581–4(A). Although article 581–4(A) is a definitional section and does not set forth an offense, interpretation of terms thereunder bears directly on one's criminal liability under the Act.

■ In *Bruner v. State*, 463 S.W.2d 205 (Tex.Crim.App.1970), this Court was asked to determine whether the alleged security was an "investment contract" under article 581–4(A). Concluding that the transaction involved was not an "investment contract" and therefore not a security, we discussed the penal nature of the Act:

> ... we must recognize that the State Securities Act is highly penal in nature and requires that it be strictly construed. [citations omitted] A forbidden act must come clearly within the prohibition of the statute and any doubt as to whether an offense has been committed should be resolved in favor of the accused.

*Id.* at 215. We adhere to our holding in *Bruner* and will continue to construe article 581–4(A) strictly.

■ However, a strict construction does not mean that we isolate terms or phrases from the context in which they appear. We always strive to give words and phrases meaning within the context of the larger provision. Neither does a strict construction mean that we ignore the plain meaning of terms. *See S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 354–55, 64 S.Ct. 120, 125, 88 L.Ed. 88 (1943) (recognizing, in construing federal Securities Act, that "rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one").

## II.

■ With these principles in mind, we turn to the Texas Act. The State correctly points out that the phrase "other evidence of indebtedness" appears in a couple of places in the Act, without reference to "mortgage certificate." Article 581–6 describes securities that are exempt from the Act. Subsection (I) and (J) thereof list the following exempt securities:

I. Notes, bonds, or other evidence of indebtedness or certificates of ownership which are equally and proportionately secured without reference of priority of one over another, and which, by the terms of the instrument creating the lien, shall continue to be so secured by the deposit with a trustee of recognized responsibility ...

J. Notes, bonds or other evidence of indebtedness of religious, charitable or benevolent corporations.

If "other evidence of indebtedness" was intended to have meaning only in relation to "mortgage certificate," it makes little sense to use the phrase singularly. As it appears in these subsections, grouped with notes and bonds, "other evidence of indebtedness" indicates that notes and bonds are one type of indebtedness, but there are "other" like types of indebtedness that fall thereunder.

Further, when section 4(A) is broken down by types of securities in the order in which they are listed, "other evidence of indebtedness" would logically be grouped with notes and bonds, as well as mortgage certificates. Viewed in this context and considering its use within other sections of the Act, we hold the Court of Appeals erred in concluding that "other evidence of indebtedness" must be "a document similar to a mortgage certificate or real property." Rather, we view "other evidence of indebtedness" as expanding upon the grouping "note, bond, debenture, mortgage certificate." In other words, notes, bonds, debentures and mortgage certificates are all types of evidence of indebtedness, but "other" evidence of indebtedness might also fall within the Act.

In concluding that "evidence of indebtedness" must be similar to a "mortgage certificate," the Court of Appeals relied in part upon the differences between the Texas Act and the Federal Act. The Federal Act defines "security" as:

Any note, treasury stock, bond, debenture, *evidence of indebtedness,* certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription,

transferable share, investment contract, voting-trust certificate . . .

15 U.S.C.A. § 77b. Pointing to the federal provision, the Court of Appeals stated that when a Texas provision varies from a "borrowed" provision, courts must presume the Texas Legislature intended the Texas law to be different. *Thomas,* slip op. at 8. The Court concluded that section 4(A)'s use of the phrase "mortgage certificate or other evidence of indebtedness" was a deviation from the Federal Act's singular listing of "evidence of indebtedness" and that "this deviation [was] a de facto amendment." *Id.* at 9. We disagree with this assessment. While the Court of Appeals properly states that we often look to differences between the provision under interpretation and its federal counterpart, we need not attribute substantive significance to every variation. A variation as seemingly minor as the placement of a comma gives us pause to carefully consider whether the legislature could have intended this variation to be substantively consequential. There is no discussion in the legislative history of section 4(A) shedding any light on the meaning of the phrase "evidence of indebtedness." In the absence of any indication in the legislative history of such intent, we think it doubtful the legislature would have risked making a "de facto amendment" of this import by merely moving the placement of a comma. If the legislature had intended the phrase "evidence of indebtedness" to relate only to a mortgage certificate or real property it could have made that clear by specifically providing "note, bond, debenture, mortgage certificate or other evidence of indebtedness *relating to mortgage certificates or real property . . . .*" It did not.

5. "Debt" is defined in part as "[a] sum of money due by certain and express terms." BLACK'S LAW DICTIONARY 403 (6th ed. 1990).

6. Black's Law Dictionary defines "Note" in part as
An instrument containing an express and absolute promise of signer (*i.e.* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time.
BLACK'S LAW DICTIONARY 1060 (6th ed. 1990). "Bond" is defined in part as

## III.

◼ Having disapproved of the Court of Appeals' definition of "evidence of indebtedness," we are now faced with the further question of how the phrase should be defined. The State urges this Court to apply the definition ascribed by the Texas Supreme Court in *Searsy, supra.* In *Searsy,* the Supreme Court observed that "evidence of indebtedness" is a term taken from the Federal Act and has been defined by federal courts as "all contractual obligations to pay in the future for consideration presently received." *Searsy,* 560 S.W.2d at 641 (citing *United States v. Austin,* 462 F.2d 724, 736 (10th Cir.), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972)). The Supreme Court held that although the options at issue there were subject to market fluctuations as to the amounts due or payable, they nevertheless represented "an obligation to pay . . . a monetary return at some future time." *Id.* at 642. Appellant contends the *Searsy* definition is too broad for use in the criminal context.

Black's Law Dictionary defines "indebtedness" as:

The state of being in debt, without regard to the ability or inability of the party to pay the same. The owing of a sum of money upon a certain and express agreement. Obligations yet to become due constitute indebtedness, as well as those already due. And in a broad sense and in common understanding the word may mean anything that is due and owing. *See also* Debt.[5]

BLACK'S LAW DICTIONARY 768 (6th ed. 1990). Notes, bonds, debentures, and mortgage certificates all evidence "the owing of a sum of money upon a certain and express agreement." 6

A certificate or evidence of a debt on which the issuing company or governmental body promises to pay the bondholders a specified amount of interest for a specified length of time, and to repay the loan on the expiration date.
*Id.* at 178. "Debenture" is defined in part as
A promissory note or bond backed by the general credit and earning history of a corporation and usually not secured by a mortgage or lien on any specific property[.]
*Id.* at 401. "Mortgage certificate" is defined as

"The owing of a sum of money upon a certain and express agreement" is consistent with, but even broader than, *Searsy*'s definition of evidence of indebtedness, as *Searsy* requires consideration presently received. We hold that *Searsy*'s definition is consistent with a plain reading of the phrase "other evidence of indebtedness" as used in the context of section 4(A) and adopt the same as our own. We accordingly interpret the phrase "evidence of indebtedness" to mean "all contractual obligations to pay in the future for consideration presently received." *Searsy, supra.* We emphasize that this definition is limited by the purposes of the Act itself and by the context in which it appears. That is, as discussed above, an evidence of indebtedness is a similar *type* of security as a note, bond, debenture, and mortgage certificate. In addition, the term must be applied in light of the underlying purpose of the Act, to "protect investors."[7] We see no other way to reasonably interpret this provision, while remaining true to the plain language of the terms and consistent with the Act as a whole. Our holding is also consistent with the holdings of federal courts in interpreting this and other terms under the Federal Act. *See, e.g., Llanos v. United States,* 206 F.2d 852, 854 (9th Cir.1953) (recognizing promissory note as "clearly an evidence of indebtedness"), *cert. denied,* 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); *United States v. Austin,* 462 F.2d 724, 736 (10th Cir.) (defining term "evidence of indebtedness" "to include all contractual obligations to pay in the future for consideration presently received"),

*cert. denied,* 409 U.S. 1048, 93 S.Ct. 518, 545, 547, 34 L.Ed.2d 501 (1972); *United States v. Attaway,* 211 F.Supp. 682, 685 (W.D.La.1962) (defining "securities" as "evidences of obligations to pay money, or of a right to participate in the earnings or distribution of property"); *S.E.C. v. Thunderbird Valley, Inc.,* 356 F.Supp. 184, 187 (S.D.S.D.1973) (stating "the ordinary terms of 'any note' or 'evidence of indebtedness' are self-defining and require no further definition" and further that the term "security" should be viewed as flexible enough to "meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits").

Appellant argued before the Court of Appeals that the evidence was insufficient to show that he sold an "evidence of indebtedness," in part, because a written document is necessary to constitute a security under the Act. Because the Court of Appeals held the evidence insufficient for other reasons (which we herein disapprove), it did not address the question of whether or not a writing is required under the Act. *See* Fn 4, supra. We vacate the judgment of the Court of Appeals and remand this case to that court for further consideration consistent with this opinion.

CLINTON, J., dissents.

---

Document evidencing participation in a large mortgage held by the mortgagee for the benefit of the certificate holders.

*Id.* at 1012. "Mortgage" is defined in part as ... an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt. *Id.* at 1009.

7. Article 581–10–1, *Purposes,* provides:
   A. This Act may be construed and implemented to effectuate its general purpose to maximize coordination with federal and other states' law and administration, particularly with respect to:
   (1) procedure, reports, and forms; and
   (2) exemptions.
   B. This Act may be construed and implemented to effectuate its *general purposes to protect investors* and consistent with that pur-

pose, to encourage capital formation, job formation, and free and competitive securities markets and to minimize regulatory burdens on issuers and persons subject to this Act, especially small businesses.
(emphasis added). Given that the general purpose of the Act is to "protect investors," an alleged "evidence of indebtedness" also must be an "investment" in order to constitute a security and therefore fall within the confines of the Act. *Cf. Reves v. Ernst and Young,* 494 U.S. 56, 63, 110 S.Ct. 945, 950, 108 L.Ed.2d 47 (1990) (since intent in enacting securities laws was to regulate *investments,* but not all "notes" are "investments," the term "any note" "must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts").