PD-0330-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/22/2015 11:16:05 PM
Accepted 5/26/2015 10:30:21 AM
ABEL ACOSTA
CLERK

**PD-0330-15**

## COURT OF CRIMINAL APPEALS OF TEXAS

**JAY SANDON COOPER**

**V.**

**STATE OF TEXAS**

**PETITION FOR DISCRETIONARY REVIEW**

**FILED BY JAY SANDON COOPER**

**ON APPEAL FROM**
**THE COUNTY COURT AT LAW NO.2, GRAYSON COUNTY, TEXAS**
**CASE NO. 2011-2-1391.**

**THE FIFTH COURT OF APPEALS AT DALLAS, TEXAS**
**CASE NO. 05-14-00089-CR**.

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

**JAY SANDON COOPER, PRO SE**
**1520 JANWOOD DRIVE**
**PLANO, TEXAS 75075**
**(972) 358-8999**
**NO FAX**
jaysandoncooper@gmail.com
**APPELLANT**

**ORAL ARGUMENT**
**REQUESTED**

1

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

TRIAL COURT JUDGE:     The Honorable Carol M. Siebman
                       County Court at Law No.2, Grayson County, Texas


PARTIES and COUNSEL:

Appellant:                      Jay Sandon Cooper

          Counsel:              Jay Sandon Cooper, Pro Se
                                1520 Janwood Dr.
                                Plano, Texas 75075
                                (972) 358-8999
                                No Fax

          Trial:                J. Richard Dunn
                                Texas Bar Card No. 00783995
                                108 S. Crockett
                                Sherman, Texas 75090
                                (903)893-5535

          Appeal:               Pro Se

Appellee:                       State of Texas

                                Joe Brown
                                Criminal District Attorney
                                Grayson County, Texas

     Counsel:
          Trial:                Michael S. Kelly
                                Texas Bar Card No. 24055767
                                200 S. Crockett, Ste. 116A
                                Sherman, Texas 75090

          Appeal:               Karla R. Hackett
                                Texas Bar Card No. 01923400
                                200 S. Crockett, Ste. 116A
                                Sherman, Texas 75090
                                Phone: (903) 813-4361
                                Fax: (903) 892-9933

**TABLE OF CONTENTS**

Identity of Judges, Parties, and Counsel…………………………………… 2

Table of Contents…………………………………………………………… 3

Index of Authorities………………………………………………………… 4

Statement Regarding Oral Argument……………………………………… 4

Statement of the Case……………………………………………………. 5

Statement of Procedural History…………………………………………. 5

Grounds for Review………………………………………………………… 5

**ISSUE 1.    Did the Trial Court have Jurisdiction?**

**ISSUE 2.    Was the Judge Biased?**

**ISSUE 3.    Did the Appellate Court Follow the Process?**

**ISSUE 4.    Does our judicial system permit a person to be convicted of a criminal offense when the trial was fundamentally unfair, including for untruthful testimony?**

Argument……………………………………………………………… 5

Prayer……………………………………………………………………. 22

Appendix……………………………………………………………… 24

# INDEX OF AUTHORITIES

**Cases**                                                                                                          **Page**

Abdygapparova v. State, 243 S.W.3d 191, 209 (Tex.App.-San Antonio, 2007)..10

Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003)…………………7

City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502,
      96 L.Ed.2d 398 (1987)……………………………………………………….10

Davis v. State, 61 S.W.3d 94, 99 (Tex.App.-Amarillo, 2001)…………………..21

Davis v. State, 947 S.W.2d 240, 242-244 (Tex.Crim.App.1997)………………..15

Drago v. State, 553 S.W.2d 375, 377–78 (Tex.Crim.App.1977)…………………15

Earhart v. State, 823 S.W.2d 607, 616 (Tex. Crim. App. 1991) cert. granted,
   judgment vacated, 509 U.S. 917, 113 S. Ct. 3026, 125 L. Ed. 2d 715 (1993)..21

Garza v. State, 771 S.W.2d 549, 558 (Tex.Crim.App.1989)……………………..15

Hinojosa v. Dretke, No. CIV. SA-01-CA-136-RF,
      2004 WL 2434353, at 6 (W.D. Tex. Sept. 30, 2004)  ……………………20

Mahaffey v. State, 316 S.W.3d 633 (Tex.Crim.App.2010).  ………………………7

Powell v. State, 5 S.W.3d 369, 375 (Tex.App.-Texarkana 1999, pet. ref'd) ……..13

State v. Duran, 396 S.W.3d 563, 569 (Tex.Crim.App.2013)…………………… 15

State v. Elias, 339 S.W.3d 667, 674 (Tex.Crim.App.2011)………………………15

State v. Johnson, 198 S.W.3d 795, 797 (Tex. App.-San Antonio, 2006)……….6 21

Stearns v. State, No. 13-05-112-CR,
      2007 WL 2142651, at 1 (Tex. App. July 26, 2007) not pub'd……………..20

Thomas v. State, 919 S.W.2d 427, 430 (Tex.Crim.App.1996)……………… 6, 21

Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006)………………… 21

**STATUTES AND RULES**

U.S. Const. Amend I…………………………………………………………………10

Texas Constitution Article I, §5…………………………………………… 7, 10

§ 25.0003(a), (b), Tex. Gov. Code. ……………………………………………..9

§ 25.0932, Tex.Gov. Code…………………………………………………………9

§ 545.351, Tex. Transp. Code……………………………………………………..9

§724.019, Texas Transportation Code………………………………………….18

§724.062, Texas Transportation Code. …………………………………………..18

Rule 38.8(b), Tex.R. App.P……………………………………………………….10

Rule 603, Texas Rules of Evidence……………………………………… 7, 10

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument.

## STATEMENT OF THE CASE

This is an appeal from a conviction for Driving While Intoxicated (First), on January 23, 2014. After a review for fundamental error, the judgment was affirmed by the Fifth Court of Appeals at Dallas.

## STATEMENT OF PROCEDURAL HISTORY

The Fifth Court of Appeals opinion was issued on January 8, 2015. Appellant filed a Motion for Rehearing on January 23, 2015. The Motion for Rehearing was overruled on February 9, 2015. A Motion to Extend Time to file this Petition was granted on March 27, 2015.

## GROUNDS FOR REVIEW / STATEMENT OF QUESTIONS

(Petitioner did not have access to the record at the time the Petition was prepared)

**ISSUE 1.    Did the Trial Court have Jurisdiction?**

**ISSUE 2.    Was the Judge Biased?**

**ISSUE 3.    Did the Appellate Court Follow the Process?**

**ISSUE 4.    Does our judicial system permit a person to be convicted of a criminal offense when the trial was fundamentally unfair, including for untruthful testimony?**

## ARGUMENT

**STANDARD**

"**Any doubt as to whether an offense has been committed should be resolved in favor of the accused**." Thomas v. State, 919 S.W.2d 427, 430 (Tex.Crim.App.1996); State v. Johnson, 198 S.W.3d 795, 797 (Tex. App.-San

6

Antonio, 2006). The Court's duty to administer justice outweighs its duty to be consistent. Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003). Questions of law are reviewed by this Court *de novo*. Mahaffey v. State, 316 S.W.3d 633 (Tex.Crim.App.2010).

## STATUTES AND RULES
Texas Constitution Article 1, §5
**Witnesses not disqualified by religious beliefs; oaths and affirmations**
No person shall be disqualified to give evidence in any of the Courts of this State on account of his religious opinions, or for the want of any religious belief, but all oaths or affirmations shall be administered in the mode most binding upon the conscience, and shall be taken subject to the pains and penalties of perjury.


Rule 603, Texas Rules of Evidence
Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

## RECORD REFERENCES
All references to the Reporter's Record (RR) are to Volume (Vol.) 7, unless otherwise stated. References to the RR follow this format: page number ":" lines. Eg. 38:5-12 is RR Vol.7, page 38 at lines 5-12.

Citations to the Clerk's Record are to the page number identified in the Index to Vol.1: CR1:(page numbers). Supplements will be identified by original documents.

The ALR hearing (Administrative License Revocation) was placed in the record along with the Motion to Suppress. It will be referred to as "ALR".

**ISSUE 1.    Did the Trial Court have Jurisdiction?**

**ISSUE 2.    Was the Judge Biased?**

**ISSUE 3.    Did the Appellate Court Follow the Process?**

**ISSUE 4.    Does our judicial system permit a person to be convicted of a criminal offense when the trial was fundamentally unfair, including for untruthful testimony?**

## SUMMARY

The Judge was biased and recused herself after trial and ruling Cooper's Motion to Suppress, so the trial was fundamentally unfair.

The Arresting Officer (AO) had his radar unit in stationary mode while he was moving toward Cooper, thus adding the speed of his vehicle to the speed of Mr. Cooper's vehicle.  So, the reason for the traffic stop was not valid.

The arrest was not for an offense: Without any indication that Mr. Cooper was not safe to drive, he was arrested for failure or refusal to participate in roadside field sobriety tests to convince the officer that Mr. Cooper was safe to drive.

The breath test on which Mr. Cooper was convicted was administered after the intoxilyzer machine gave an error indicating the presence of "mouth alcohol".  The DPS standard requires that the operator wait 15 minutes before administering the next test to let the mouth alcohol dissipate.  Instead, the BTO waited only 2 minutes, fooling the machine into a result that Mr. Cooper had a Blood Alcohol

Content (BAC) that he was intoxicated, instead of a mouth alcohol content.

Convictions have to based upon the truth of the testimony and evidence; otherwise, the judicial system is fundamentally unfair. The ability to convict upon lies makes the system no better than the witch trials.

**JURISDICTION**

The plain language of the statute conferring jurisdiction on the statutory county court appears to deny jurisdiction over matters concerning public highways, such as U.S. 75. § 25.0003(a), (b), Tex. Gov. Code. The County Court at Law No.2 is a statutory county court. § 25.0932, Tex.Gov. Code. The offense with which Mr. Cooper was charged is alleged to have been committed on that public highway. RR Vol.9, State's Exhibit 6 at p.1 ("Location of Incident SB HWY 75"). Mr. Cooper contends that the County Court at Law No.2 of Grayson County, Texas had no jurisdiction to hear or preside over this case where the traffic stop was allegedly for speeding (§ 545.351, Tex. Transp. Code) and the charge was Driving While Intoxicated. Sec. 49.04, Tex.Penal Code. Both concern a public highway. § 25.0003(a), (b), Tex. Gov. Code.

**THE JUDGE**

After denying Mr. Cooper's Motion to Suppress and presiding over his jury trial, the Trial Court Judge recused herself. CR1 589.

The Court's Findings of Fact (CR1 543-545) demonstrate that the Court

9

denied Mr. Cooper's Motion to Suppress based on Mr. Cooper's protected speech. U.S. Const. Amend I; <u>City of Houston v. Hill</u>, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). The Trial Judge's personal attacks contained in her findings and conclusions (CR1:543-545) demonstrate that the Judge should have recused herself before trial and before ruling on Mr. Cooper's Motion to Suppress. Instead, the Judge recused herself post-trial. CR1:589. Because the Trial Judge should have recused herself, and did not, the trial was fundamentally unfair. Mr. Cooper is entitled to an impartial judge by the U.S. Constituion, and a violation of that right is a structural error that is not subject to a harm analysis. <u>Abdygapparova v. State</u>, 243 S.W.3d 191, 209 (Tex.App.-San Antonio, 2007) (citations omitted).

**DID THE COURT OF APPEALS CONSIDER THIS CASE WITHOUT FOLLOWING RULE 38.8(b), Tex.R. App.P.?**

The Court of Appeals' Opinion (Tab 1) makes it clear that it did not refer this case to the trial court to determine whether appeallant desired to prosecute this appeal before allegedly determining it only on fundamental error. Rule 38.8(b), Tex.R. App.P.

**FAILURE TO TELL THE TRUTH IS A STRUCTURAL ERROR, and so is ARRESTING PERSONS FOR THINGS THAT ARE NOT CRIMES**

If people can be convicted of crimes on the fantastic imaginations of others, the system means nothing, so the truth must be structural. We have a constitutional and statutory edict to ensure that the truth is told. Tex.Const.Art.1, Sec.5; Rule 603, Tex.R.Evid.

This case involves the Arresting Officer holding fast to his imagination that his radar was in moving mode while it was actually in stationary mode, so that the speed of his vehicle was added to the speed of Cooper's vehicle. Even confronted with the manual of how the radar works, the officer did not vary.

The officer stopped Mr. Cooper for the speed of his own vehicle, then arrested Mr. Cooper not for suspicion of any offense, but for refusing to perform road side field sobriety tests. That is not even an offense.

It also involves the State's Expert Witness testifying that the breath test had to be conducted after a 15 minute waiting period due to the machine determining that mouth alcohol was present between two samples taken from Mr. Cooper. Yet, the test results showed that Mr. Cooper was convicted for a result obtained without that wait time, and the condemning sample was taken after only two (2) minutes. Yet, the State's expert testified that the test was conducted properly. So, Mr. Cooper was convicted of mouth alcohol, not blood alcohol content.

This is a case of actual innocence.

**THE TRAFFIC STOP**

Cooper was stopped for allegedly driving in excess of the speed limit as he drove south on the freeway toward an officer who was driving north on the service road.

11

One tuning fork calibrates the police radar in stationary mode. RR 204:2-16; RR 204:20-25; RR Vol.9, State's Exhibit 7 at page 21. The Training Officer (TO) confirmed that by reviewing the manufacturer's user manual. RR 204:20-25; RR Vol.9, State's Exhibit 7 at page 21. To test the radar for use in moving mode requires the officer to use two (2) tuning forks at the same time. Id. The TO said the radar unit had to be tested every shift. RR 198: 21-25.

The TO also testified that operating the radar unit in stationary mode while the patrol vehicle is moving toward the target vehicle, in this case Mr. Cooper, would add the speed of the patrol car to the speed of Mr. Cooper's vehicle. RR 208:20 to 209:16.

It was Officer Olivares' (AO) routine to only check the radar unit using one (1) tuning fork. RR 29:9-16, 69:13 to 82:6. He did not testify that he checked the radar on August 12, 2011. RR 84:3 to 85:9. AO never manually switched his radar unit to mobile mode. RR 72:4-8; RR 31:3-10. AO believed that his radar unit automatically toggled from stationary mode to moving mode without any intervention by him. RR 72:4-8 (the radar automatically switches from stationary to moving mode); RR 31:3-10 ("[I]t's all calculated for you. Once it's on, it's on, you don't have to push any other buttons..."). AO was not able to testify that the radar unit was attached to the Vehicle Speed Sensor (VSS) to enable automatic toggling between stationary and moving modes. RR 72:9-19; RR Vol.9, State's

12

Exhibit 7 at pages 8-9, and 23.

The Court of Appeals determines from the totality of the circumstance whether the traffic stop was **reasonable** for a police officer who used due **caution**. Powell v. State, 5 S.W.3d 369, 375 (Tex.App.-Texarkana 1999, pet. ref'd) (internal citations omitted) emphasis added.

**THE ARREST**

Mr. Cooper was not arrested for any offense, he was arrested for not performing field sobriety tests (SFST's).

What informed Officer Olivares' decisions varies depending on whether one believes his arrest report on August 13, 2011; testimony on February 21, 2012, at the Administrative License Revocation (ALR) hearing; or testimony at trial on January 22, 2014, none of which are the same.

After the initial contact, Officer Olivares conducted an investigative detention. Mr. Cooper declined to participate in Standard Field Sobriety Tests (SFST's) (RR 37:17-19) and blow in a Portable Breath Test (PBT) device. RR 37:20-25. It was Van Alstyne Police Department's Standard Operating Procedure to arrest persons who refuse to participate in the SFST's. ALR 27:24 to 28:1. Mr. Cooper was handcuffed and seatbelted inside the locked police car. RR 38:5-12. Officer Olivares called his supervisor at home. ALR 28:1-2. He confirmed the practice of arresting persons for not performing SFST's. ALR 28:7-10.

When Officer Olivares did not obtain any clues of DWI (RR 44:16-24), he arrested Mr. Cooper for not participating in SFST's, because Officer Olivares was unable to determine whether Mr. Cooper was safe to drive. RR 39:13-18; RR Vol.9, State's Exhibit 6 (Arrest Report p.3, last ¶).  The AO did not determine that Mr. Cooper was "not safe to drive."  RR 39:13-18; RR Vol.9, State's Exhibit 6 (Arrest Report p.3, last ¶).

**Mr. Olivares testified, "It's standard operating procedure…if you refuse standard field sobriety tests, that you are placed under arrest." ALR 27:24 to 28:1.**  There was nothing else previous to the final arrest to cause Officer Olivares to believe Mr. Cooper was intoxicated. ALR 32:21-24.

The arrest report stated that Mr. Cooper was speeding; had a smell of alcohol coming from his vehicle and breath; and slightly red eyes. RR Vol.9, Exhibit 6 (Arrest Report p.3).  "Alone", these are not signs of intoxication. RR 60:12-20.  Officer Olivares observed Mr. Cooper obtain his driving license and insurance, exit his vehicle and walk to the rear, all without exhibiting signs of intoxication.  RR Vol.9, State's Exhibit 6 (Arrest Report p.3)

The State adduced no evidence that slightly red eyes were in any way related to being intoxicated.  Mr. Cooper was arrested after he refused to perform SFST's and blow in a Portable Breath Tester (PBT). RR Vol.9, State's Exhibit 6 (Arrest Report p., last 3¶¶).  Officer Olivares further described this arrest as for refusing

14

the SFST's and PBT "since he was not giving [Officer Olivares] a chance to determine if [Mr. Cooper] was able to operate a motor vehicle safely." RR Vol.9, State's Exhibit 6 (Arrest Report p.3, last ¶).

First, a lawful arrest or detention requires reasonable suspicion. Davis v. State, 947 S.W.2d 240, 242-244 (Tex.Crim.App.1997); citing Garza v. State, 771 S.W.2d 549, 558 (Tex.Crim.App.1989). The standard is an objective one. State v. Elias, 339 S.W.3d 667, 674 (Tex.Crim.App.2011); *See also* Drago v. State, 553 S.W.2d 375, 377–78 (Tex.Crim.App.1977). "Would a **reasonable** officer in the same situation believe a crime had been or was being committed?" State v. Duran, 396 S.W.3d 563, 569 (Tex.Crim.App.2013) emphasis added.

**THE BREATH TEST**

**BTO**
**Certification**

The person with a key to the Intoxilyzer 5000 was Deputy Windon. RR 126:8-16. Deputy Windon became a certified Breath Test Operator in February 2009. RR 121:8-23. His certification expired at two (2) years (February 2011). RR 122:11-17. He was next certified in October 2011. RR 122:18-22. So, his certification was expired when he performed the test on Mr. Cooper in August, 2011.

> Q. Okay. And so, do you know when you would have been last certified in order to be able to operate the intoxilyzer?
> A. I was recertified, I believe my last certificate expired October of 2011.

15

Q.    Okay, And so, when --in August of 2011, were you a certified breath test operator?
A.    Yes, sir.

RR 122:18-22.

Deputy Windon testified that his training and certification as a BTO was not issued by the State, but by a private company that the State did not show was authorized to train and certify BTO;s: Fondren Forensics. RR 121:16-18.

**TS / Certification**

The Technical Supervisor (TS) testified that it was her responsibility to provide training and certification to BTO's in Grayson County, including Deputy Windon. RR 146:10-24.

**TS / Breath Test Results**

Deputy Windon testified:

A.    "[T]hen [I] begin my 15-minute waiting period.
Q.    What is that for?
A.    To make sure there is no residual alcohol inside their mouth.
RR 123:22 to 124:1.

Deputy Windon testified that the "valid test results" were obtained after waiting only two (2) minutes (RR 130:1-4; 134:9-22).

There were four samples of Mr. Cooper's breath within a ten (10) minute period. RR Vol.9, State's Exhibits 5 and 3.  The fist two were taken by 1:55 a.m. RR Vol.9, State's Exhibit 5.  The first registered .164 and the second registered .138.  RR 166:8-21.  The third sample was taken at 2:02 a.m. RR Vol.9, State's Exhibit 3.  The third sample registered .15. Id.  The fourth sample was taken at

16

2:05 a.m. Id. The fourth sample was measured at .153. Id. Although taken in close proximity (RR 134:14-22), the first and second samples were rejected by the machine for being .026 apart. RR 166:20-25.

After waiting 15 minutes inside the intoxilyzer room (RR 123:17-23), Mr. Cooper provided a sample of his breath to determine his blood alcohol content (BAC). RR Vol.9, State's Exhibit 4. The first of three (3) tests ended at 1:48a.m. (one (1) hour and 52 minutes after the initial stop). RR. Vol.9, States Exhibit 4. The first breath sample was deficient either as to the length of time Mr. Cooper blew or the pressure. RR 154:5-7; 177:24 to 178:3.

Two (2) minutes later (RR 130:1-4), Mr. Cooper began a second test, in which he provided two (2) consecutive samples of his breath. RR Vol.9, State's Exhibit 5. The Intoxilyzer 5000 rejected the samples because they were more than .02 apart. RR 163:2-16. According to the TS, who instructs BTO's to obtain certification to operate the Intoxilyzer machines (RR 146:10-15), an "02" disagreement is caused by the measurement of mouth alcohol instead of BAC. RR 163:2-16. The DPS requires that a test not be administered within 15 minutes of an incident of mouth alcohol. RR 183:6 to 184:2. Mouth alcohol can result from belching (RR 179:20 to 180:3) or regurgitating the contents of the stomach (RR 159:6-23) and fool the machine when the tests are in close proximity. RR 151:3-17. The second test concluded at 1:55 a.m. RR Vol.9, State's Exhibit 5. The

17

results were indicative of an incident of mouth alcohol (RR 163:2-16) requiring a 15-minute waiting period. RR 183:6 to 184:2.

The third test began two (2) minutes later (RR 130:1-4), with the two (2) samples for that test both obtained in the next ten (10) minutes, by 2:05 a.m (RR Vol.9, State's Exhibit 3), two (2) hours and nine (9) minutes after the initial traffic stop. RR Vol.9, State's Exhibit 6 (Arrest Report p.1).

The incident began to be recorded when Officer Olivares radioed his dispatcher before approaching Mr. Cooper's parked vehicle. RR 34:22-25; ALR 37:12-19.  The Texas Legislature has stated that it is not reasonable to take a breath or blood sample more than two (2) hours after the traffic stop. RR 184:9-15; §724.019, §724.062, Texas Transportation Code.

**TS' Testimony**

The Trial Court described Julie Evans as an expert witness. RR 190:3-5, :11-12.

**Breath Tests**

The Texas Department of Public Safety has developed Rules for the administration of intoxilyzer examinations by BTO's. RR 183:6-9.

After an incident of mouth alcohol (.02 disagreement), 15-minutes required before the next breath test. RR 159:6 to 160:1.  Nonetheless, Julie Evans testified that the breath test results (RR Vol.9, State's Exhibit 3) were proper. RR 160:21-24; 163:1-7.  The State presented this test result <u>first</u>.  So, the State knew of the falsity.

The reason samples are .02 apart is because of the measurement of "mouth alcohol", instead of a deep lung sample reflective of Blood Alcohol Content (BAC). RR 163:2-16. Tests that are in close proximity can fool the machine. RR 151:3-17. The Technical Supervisor testified that it is a rule implemented by the Texas Department of Public Safety that certified Breath Test Operators wait 15 minutes after evidence of mouth alcohol before administering an intoxilyzer examination. RR 183:6-9; RR 159:10-23. Waiting 15 minutes after an incident of mouth alcohol prevents the machine from being fooled. RR 151:6-17. Mouth alcohol can result from belching (RR 179:20 to 180:3) or regurgitation of the contents of one's stomach. RR 159:6-23. According to the Technical Supervisor, the 15-minute protocol is to prevent or safeguard against inaccurate test results from the presence of mouth alcohol. RR 183:6 to 184:2. After an 02 disagreement, "start the clock over…" RR 159:20-23.

Although the test was incorrectly administered (waiting only 2 minutes instead of 15 minutes to clear mouth alcohol), Ms. Evans testified for the State that Mr. Cooper would have a BAC about the same as the intoxilyzer test (allegedly .015) at the time he was driving. RR 169:13-21.

> An appellate court may, however, "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the [trial] court." Tex.R. Evid. 103(d); *see* Jasper v. State, 61 S.W.3d 413, 420 (Tex.Crim.App.2001); Blue, 41 S.W.3d at 132. No objection is required when the error is so egregious that it rises to constitutional dimensions. See Jasper, 61 S.W.3d at 421; Blue, 41

19

S.W.3d at 130. Fundamental errors exist when rights are violated that are considered so fundamental to the proper functioning of our adjudicatory process that they cannot be forfeited, i.e., they are not extinguished by inaction alone. Blue, 41 S.W.3d at 131. For an accused to lose a fundamental right, he or she must expressly relinquish that right. Id.; Nunez v. State, 117 S.W.3d 309, 319 (Tex.App.-Corpus Christi 2003, no pet.).

Stearns v. State, No. 13-05-112-CR, 2007 WL 2142651, at 1 (Tex. App. July 26, 2007) not pub'd.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. To succeed in showing a due process violation from the use of allegedly perjured testimony, a defendant has the burden of establishing that (1) the witness in question actually gave false testimony, (2) the falsity was material in that there was a reasonable likelihood that it affected the judgment of the jury, and (3) the prosecution used the testimony in question *knowing* that it was false. For use of perjured testimony to constitute constitutional error, the prosecution must have *knowingly* used the testimony to obtain a conviction. In order for allegations of perjured testimony to constitute a due process violation, a defendant "must show that the prosecution knowingly presented materially false evidence to the jury." For the perjury to be material, there must have been a reasonable likelihood that the false testimony could have affected the judgment of the jury.

Hinojosa v. Dretke, No. CIV. SA-01-CA-136-RF, 2004 WL 2434353, at 6 (W.D. Tex. Sept. 30, 2004) not pub'd. (citations omitted) emphasis in orig.

When the fact finders (judge or jury) decided against the great weight and preponderance of the evidence, the Court of Appeals should exercise its appellate fact jurisdiction and order a new trial.

We have always held that an appellate court must first be able to say, with some objective basis in the record, that the *great weight and*

*preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial.

Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) emphasis in original (overruling Zuniga v. State, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004).

[I]f there is a *reasonable* hypothesis other than the guilt of the accused, then it cannot be said that guilt has been established beyond a reasonable doubt.

Earhart v. State, 823 S.W.2d 607, 616 (Tex. Crim. App. 1991) (emphasis in original) cert. granted, judgment vacated, 509 U.S. 917, 113 S. Ct. 3026, 125 L. Ed. 2d 715 (1993).

"Any doubt as to whether an offense has been committed should be resolved in favor of the accused." Thomas v. State, 919 S.W.2d 427, 430 (Tex.Crim.App.1996); State v. Johnson, 198 S.W.3d 795, 797 (Tex. App.-San Antonio, 2006).

**HARM**

Appellant has shown harm by the errors complained of. Consequently, this Court cannot but hold that the trial court's error was harmful under Texas Rule of Appellate Procedure 44.2(a)." Davis v. State, 61 S.W.3d 94, 99 (Tex.App.-Amarillo, 2001). Cooper was stopped and arrested having committed no crimes. Then, he was convicted having committed no crime. The State's own evidence proves his innocence.

## CONCLUSION AND PRAYER

**WHEREFORE**, Appellant requests that this Court of Criminal Appeals grant his Petition and afterwards reverse and render judgment or remand to the trial court for further proceedings consistent with this Court's opinion.

Respectfully submitted,

/s/ Jay Sandon Cooper
Jay Sandon Cooper
1520 Janwood Dr.
Plano, Texas 75075
(972)358-8999
NO FAX
JaySandonCooper@gmail.com
APPELLANT

## CERTIFICATE OF COMPLIANCE

This Brief complies with the requirements of Rule 9.4(i)(2)(D) because it is produced on a computer in a conventional typeface no smaller than 14-point except for footnotes, which are no smaller than 12-point; and contains 3,672 words.

/s/ Jay Sandon Cooper
JAY SANDON COOPER

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing and attached documents were electronically served to the following recipients, if that option was available through the electronic filing manager, and if not, it was mailed to Appellee's counsel on May 22, 2015:

> Joe Brown,
> Criminal District Attorney
> Grayson County, Texas
> Karla R. Hackett
> Texas Bar Card No. 01923400
> 200 S. Crockett, Ste. 116A
> Sherman, Texas 75090
> Phone: (903) 813-4361
> Fax: (903) 892-9933

and in accordance with Rules 68.11 and 79.7, Tex.R.App.P., in the same manner it was provided to:

> Lisa C. McMinn
> State Prosecuting Attorney
> P. O. Box 13046
> Austin, Texas 78711-3046
> Telephone: (512) 463-1660
> Fax: (512) 463-5724
> information@spa.texas.gov

and 10 paper copies will be delivered to the Clerk of this Court of Criminal Appeals within three (3) business days as required by the Rules.

> /s/ Jay Sandon Cooper
> Jay Sandon Cooper

**APPENDIX**

TAB 1
1.      Opinion of the Fifth District Court of Appeals……………………..Pass Im
2.      Opinion on Rehearing…………………………………………………Pass Im

# PD-0330-15

## COURT OF CRIMINAL APPEALS OF TEXAS

## JAY SANDON COOPER

## V.

## STATE OF TEXAS

## TAB 1

### ON APPEAL FROM
### THE COUNTY COURT AT LAW NO.2, GRAYSON COUNTY, TEXAS
### CASE NO. 2011-2-1391.

### THE FIFTH COURT OF APPEALS AT DALLAS, TEXAS
### CASE NO. 05-14-00089-CR.

**JAY SANDON COOPER, PRO SE**
**1520 JANWOOD DRIVE**
**PLANO, TEXAS 75075**
**(972) 358-8999**
**NO FAX**
jaysandoncooper@gmail.com
**APPELLANT**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00089-CR

### JAY SANDON COOPER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2011-2-1391**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Myers, and Justice Brown
Opinion by Chief Justice Wright

A jury found Jay Sandon Cooper guilty of driving while intoxicated and assessed punishment at thirty' days confinement in jail and a $2,000 fine. The trial court sentenced appellant in accordance with the jury's verdict. Appellant filed a notice of appeal, and he thereafter chose to represent himself on appeal. The reporter's record was filed on May 7, 2014. The clerk's record was filed on May 13, 2014. On July 16, 2014, we ordered appellant to file his brief within thirty days. A supplemental clerk's record was filed on September 11, 2014, and on September 12, 2014, we ordered appellant to file his brief by October 3, 2014. On September 16, 2014, appellant filed a letter designating additional items for the clerk's record. On October 14, 2014, we received a supplemental clerk's record with a letter from the Grayson County Clerk stating that the items requested were included in the September 11, 2014 supplemental clerk's

record, except for the documents for in camera inspection and the Bond Information were not filed as of record. On November 13, 2014, this Court ordered appellant to file his brief by December 1, 2014. We warned that failure to do so would result in submission, without further notice, of the appeal without briefs. *See Lott v. State*, 874 S.W.2d 687, 87–88 (Tex. Crim. App. 1994); *see also* TEX. R. APP. P. 38.8(b)(4). Appellant neither filed a brief nor responded to the Court's order. Accordingly, the appeal is submitted without briefs.

Absent briefs, no issues are before us. Finding no fundamental error, we affirm the trial court's judgment.

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140089F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

JAY SANDON COOPER, Appellant

No. 05-14-00089-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 2, Grayson County, Texas
Trial Court Cause No. 2011-2-1391.
Opinion delivered by Chief Justice Wright,
Justices Myers and Brown participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 8, 2015.



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00089-CR

**JAY SANDON COOPER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2011-2-1391**

# ORDER
Before Chief Justice Wright and Justices Myers and Brown

The Court **GRANTS** appellant's January 23, 2015 motion to exceed the word limit on his

motion for rehearing.  The motion for rehearing is filed as of the date of January 23, 2015.

We **DENY** appellant's motion for rehearing.

/s/    CAROLYN WRIGHT
CHIEF JUSTICE